HARRIS, Superintendent, Appellee,

v.

ALEXANDER GRANT & COMPANY et al., Appellees;  Warner, Appellant.

[Cite as *Harris v. Alexander Grant & Co.* (1990), 61 Ohio App.3d 172.]

Court of Appeals of Ohio,
Franklin County.

No. 87AP–1114.

Decided Jan. 23, 1990.

See also 116 F.R.D. 583.

174

*Porter, Wright, Morris & Arthur, James E. Pohlman, John C. Hartranft, Terrance M. Miller, Robert W. Trafford, Daniel W. Costello, Scott E. North* and *Randall W. Knutti,* for plaintiff-appellee Connie J. Harris.

*Paxton & Seasongood, Gerald W. Simmons, Jack F. Fuchs, Leonard S. Meranus, Parker, Chapin, Flattau & Klimpl, Alvin M. Stein* and *Lee W.*

*Stremba,* for defendants and third-party plaintiffs-appellees Grant Thornton and Grant partners.

*Gilbride, Heller & Brown* and *Lawrence R. Heller,* for third-party defendant-appellee Ronnie R. Ewton.

*Keating, Muething & Klekamp* and *Bart A. Brown, Jr.,* for third-party defendant-appellant Marvin L. Warner, Sr.

*Frost & Jacobs, James R. Adams, Michael F. Haverkamp, Susan Grogan Faller, David C. Horn, Myron L. Dale, Beth A. Myers,* and *Lawrence A. Glassman, Wilson & McIlvaine* and *Charles W. Boand,* for third-party defendant-appellant Arthur Andersen & Co.

*Coolidge, Wall, Wolmsley & Lombard* and *Roger J. Makley,* for defendant-appellee David J. Schiebel.

*Anthony J. Celebrezze, Jr.,* Attorney General, *Steven Samuels* and *Nancy J. Miller, Chester, Hoffman & Willcox* and *Roderick H. Willcox,* for defendant-appellee C. Lawrence Huddleston.

*Spraul, Reyering & Cronin* and *Patrick J. Cronin,* for defendant-appellee Robert Weeder.

*Bauer, Morelli & Heyd Co., L.P.A.,* and *Arnold Morelli,* for defendant-appellee Gehl P. Babinec.

*Katz, Teller, Brant & Hild Co., L.P.A.,* and *Robert Pitcairn,* for defendant-appellee Nelson Schwab, Jr.

*Spengler, Carlson, Gubar, Brodsky & Frischling* and *Edward Brodsky,* for defendant-appellee Kelley, Drye & Warren.

*Brumleve, DeCamp, Wood & Barron* and *Norman I. Barron,* for defendant-appellee Arthur C. Elliott.

*Lerner, Sampson & Rotheuss Čo., L.P.A., Donald M. Lerner* and *J. Michael Debbeler,* for defendants-appellees Gerald Stephens and Richard Macke.

*George Mead, pro se.*

*Schulzinger & Immerman Co., L.P.A.,* and *Herbert Bass,* for defendants-appellees G. Haddad and HJ & J.

*Lerner & Harris, P.A.,* and *Alan M. Lerner,* for defendant-appellee Charles W. Streicher.

*Beckman, Weil, Shepardson & Faller* and *Kenneth R. Faller,* for defendant-appellee Russell F. Carlisle.

*Goldman & Goodman* and *Stanley Goodman,* for defendant-appellee Marvin L. Warner, Jr.

*Holbook & Poston* and *Kent W. Seifried,* for defendant-appellee American Savings & Loan Association.

*Lindhorst & Dreidame* and *James H. Moore,* for defendants-appellees Robert Braun and Stanton G. Brock.

*Bodiker & Bodiker* and *David H. Bodiker,* for defendant-appellee Clark Wideman.

*Vorys, Sater, Seymour & Pease, John C. Elam, C. William O'Neill* and *Suzanne K. Richards,* for defendants-appellees Ohio Deposit Guarantee Fund, Donald R. Hunsche and Charles Mayleban.

---

STRAUSBAUGH, Judge.

This appeal is brought by third-party defendant Marvin L. Warner, Sr. from a judgment of the Ohio Court of Claims approving a settlement agreement between plaintiff, Connie J. Harris, and defendant and third-party plaintiff Grant Thornton. The judgment barred the assertion or prosecution against Grant Thornton of any and all claims for contribution.

This matter arises from the demise in March 1985 of Home State Savings Bank ("Home State"). It is undisputed that Home State's failure was the direct result of the collapse of a Florida securities investment firm, ESM Government Securities, Inc. ("ESM"). The ESM collapse was the result of a financial arrangement whereby ESM entered into repurchase and reverse repurchase agreements with its customers. These agreements involved either the purchase or sale of securities by ESM with an agreement to either resell or repurchase those securities at a later date. As of March 1985, ESM had engaged in a massive number of such transactions but had not taken steps to assure that it would either have the securities on hand to satisfy its resell customers or the cash on hand to satisfy its repurchase customers. Rather, ESM used much of the cash to either cover its losses in other securities transactions or to make large-scale payments to its principals.

At the time of its collapse, the actions of ESM had given rise to claims against it in excess of $350,000,000. Home State, ESM's largest customer, incurred a loss as a result of the collapse of approximately $150,000,000. The loss to Home State was so large that it resulted in the closing, liquidation and forced sale of Home State. The total loss to Home State eventually exceeded $275,000,000. Plaintiff, Connie J. Harris, as Superintendent of the Division of Savings & Loan Associations for the state of Ohio, is the statutory liquidator for Home State.

Defendant and third-party plaintiff Grant Thornton, formerly known as Alexander Grant & Company ("Grant"), was retained by ESM as its certified

public accounting firm in 1976. For all periods relevant to this cause, Grant acted as ESM's independent accountant, including the auditing of ESM's financial condition, and issued auditor's reports relating to that financial condition. The auditor's reports issued by Grant for the years 1978 through 1983 contained unqualified opinions regarding the financial health of ESM, none of which indicated the existence or extent of ESM's insolvency. Grant had also provided special reports, one of which was issued to Home State, which reports did not reflect the double pledging, overvaluation of securities, or ESM's failure to match its repurchase or reverse repurchase transactions. Subsequent to the collapse of ESM, it was discovered that one of the partners in Grant had been a participant in or a beneficiary of the ESM fraud. As a result, numerous civil actions were instituted against Grant, including the instant suit.

Plaintiff commenced this action in the Hamilton County Court of Common Pleas on March 22, 1985 and sought $275,250,000 in compensatory damages and $550,500,000 in punitive damages for alleged gross negligence and fraud on the part of Grant. Grant, in February 1986, counterclaimed against plaintiff and filed a third-party complaint against thirty-six additional parties including third-party defendants Arthur Andersen and Company ("Arthur Andersen") and Marvin L. Warner, Sr. Also among the thirty-six third-party defendants were the state of Ohio, the Ohio Department of Commerce, Division of Savings and Loan Associations, and the Ohio Deposit Guarantee Fund ("ODGF"). Because of these third-party claims against the state, the action was removed to the Ohio Court of Claims in March 1986.

Arthur Andersen, as the auditor for Home State for the period 1981 through 1983, had in the interim filed suit in the Hamilton County Court of Common Pleas against plaintiff's predecessor, Robert B. McAlister. Plaintiff counterclaimed in that suit and charged Arthur Andersen with negligence, seeking to recover $275,000,000 in compensatory damages. In response to the third-party complaint by Grant, Arthur Andersen filed contribution actions against Grant for the amounts claimed from it by plaintiff. These claims of Arthur Andersen and the counterclaim of plaintiff against Arthur Andersen were likewise removed to the Court of Claims. Subsequently, on January 30, 1987, the claims court ordered that both actions be consolidated for purposes of pretrial discovery and other pretrial matters alone.

Faced with a potential liability far in excess of its insurance coverage, Grant began to negotiate settlement of the various claims against it. At the behest of a federal judge overseeing similar litigation in federal court, Grant entered into negotiations with plaintiff and ODGF which ultimately spanned a nine-month period. Although both Arthur Andersen and third-party defendant

Marvin L. Warner, Sr. were invited to join in these negotiations, both parties declined. Finally, in the fall of 1987, Grant came to terms with plaintiff and ODGF. Pursuant to the settlement agreement, plaintiff and ODGF agreed to dismiss their actions against Grant and executed covenants not to sue.[1] Grant, in turn, agreed to dismiss its actions against plaintiff and ODGF, and executed covenants not to sue those parties. Grant further agreed to make payments of $65,000,000 to Home State and $15,000,000 to ODGF. Additionally, Grant agreed to pay over to plaintiff and ODGF any amounts which remained under its insurance policy after all other claims against Grant had been settled. This monetary amount represents the single largest accountant's liability settlement in history.

The claims court, on October 22, 1987, affirmed the agreement among these parties pursuant to the provisions of R.C. 2307.32(F). Specifically, the claims court found that the agreement represented a reasonable and good faith settlement of all claims by and among the parties and, as such, barred the assertion or prosecution of any and all claims for contribution against Grant. Since there still remains before the trial court other issues and claims between Grant and Warner as well as between ODGF and Warner, the judgment was certified by the claims court as final and appealable pursuant to Civ.R. 54(B).

Marvin L. Warner, Sr. now appeals and asserts the following three assignments of error for our review:

"1. The trial court's order of October 22, 1987 is not effective as to Warner as the automatic stay provision of the Bankruptcy Code applies to this proceeding against Warner.

"2. The trial court erred as a matter of law in deciding that Harris, Grant and ODGF entered into a good faith settlement so as to extinguish Warner's claims for contribution under Ohio Revised Code Section 2307.32.

"3. The trial court erred in finding that Grant had settled in good faith and there is 'no just reason for delay' when the state of the case makes it impossible to determine Grant's relative degree of culpability or liability for the damages sought by Harris (and ODGF)."

Warner asserts under his first assignment of error that because he filed a petition in bankruptcy on the same date the claims court rendered its judgment giving rise to this appeal, the automatic stay provisions of the Bankruptcy Code mandate that this appeal be stayed. Specifically, Warner argues that

---

1. The settlement agreement was filed with the Court of Claims pursuant to C.C.R. 7. Concurrently, the parties to the settlement moved the claims court to seal certain settlement documents, which motion was granted October 22, 1987. Apparently, the agreement itself was also sealed and, therefore, not transmitted to this court. However, the parties do not dispute the terms of the agreement.

this proceeding is "against the debtor," pursuant to the provisions of Section 362(a), Title 11, U.S.Code, since it is the debtor's status at the initial proceeding and not at the appellate level which is determinative. Accordingly, Warner argues that his status as appellant in this appeal has no effect on whether the automatic stay provisions of the Bankruptcy Code require that this appeal be stayed.

In response to Warner's first argument regarding the automatic stay provisions of the Bankruptcy Code, plaintiff maintains that those provisions do not apply to this action. Whatever merit there may be to Warner's contention that a debtor's appeal should be stayed where it is an appeal from an underlying action against the debtor, plaintiff argues that since the order appealed from is a resolution of Warner's claims against Grant, Warner's argument is without merit. It is plaintiff's position that there is no doubt that Warner asserted a claim against Grant and it is only a resolution of this latter issue which is before the court on appeal. Since the underlying action is Warner's claim for contribution against Grant, plaintiff concludes that there can be no question but that the action is one by a debtor.

Grant reiterates, initially, in response to Warner's first assignment of error, the argument advanced by plaintiff. Grant also maintains that even if the automatic stay provisions are applicable to the instant cause, Warner has nevertheless failed to demonstrate that the bankruptcy petition was filed prior to the trial court's entry of the October 22, 1987 order.

ODGF merely reasserts the arguments made by plaintiff and Grant in their responses to Warner's appeal.

The pertinent sections of Section 362, Title 11, U.S.Code, provide:

"(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78eee(a)(3)), operates as a stay, applicable to all entities, of—

"(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title[.]"

Courts which have interpreted these provisions have consistently held that a bankruptcy petition filed by a debtor pursuant to Title 11, U.S.Code, automatically stays the continuation of all judicial proceedings, including appeals, against the debtor. *Commerzanstalt v. Telewide Systems, Inc.* (C.A.2, 1986), 790 F.2d 206; *Cathey v. Johns–Manville Sales Corp.* (C.A.6,

1983), 711 F.2d 60; *Assn. of St. Croix Condominium Owners v. St. Croix Hotel Corp.* (C.A.3, 1982), 682 F.2d 446. Regardless of whether the debtor is the appellant or appellee on appeal, it is the debtor's status when the proceedings commenced which is determinative of whether an action is against the debtor for purposes of staying judicial proceedings. *Assn. of St. Croix Condominium Owners, supra,* at 448–449.

On the other hand, if the underlying action giving rise to an appeal is not one against the debtor, no automatic and mandatory stay arises. Cf. *Trans Caribbean Lines, Inc. v. Tracor Marine, Inc.* (S.D.Fla.1985), 49 Bankr. 360, and *Jefferson Ward Stores, Inc. v. Doody Co.* (E.D.Pa.1985), 48 Bankr. 276. A counterclaim or cross-claim instituted by the debtor, even though prosecuted in the context of a suit against the debtor, is not subject to the automatic stay provided for in Section 362, Title 11, U.S.Code. *Trans Caribbean Lines, Inc., supra,* at 362, and *In re Regal Constr. Co., Inc.* (Bankr.Ct. Md.1983), 28 Bankr. 413, 416.

Here, the order appealed from barred Warner's claims *against* Grant. The claims court took no action with respect to any claims against Warner and any such claim is not before this court. Rather, the only claims dismissed by the Court of Claims were those prosecuted by Warner which would inure only to his benefit. Accordingly, the automatic stay provisions of Section 362, Title 11, U.S.Code, did not prohibit the trial court from dismissing Warner's counterclaims against Grant. The first assignment of error is overruled.

Warner next asserts that the claims court erred in finding that the agreement reached between Grant, plaintiff and ODGF was a good faith settlement so as to extinguish his contribution claims against Grant pursuant to R.C. 2307.32. He urges this court to define a good faith settlement as one which is within the reasonable range of the settling tortfeasor's proportionate share of comparative liability for a plaintiff's injuries. Since no Ohio court has addressed this issue, Warner relies upon the holding of the Supreme Court of California rendered in *Tech–Bilt, Inc. v. Woodward–Clyde & Associates* (1985), 38 Cal.3d 488, 698 P.2d 159, 213 Cal.Rptr. 256.

In *Tech–Bilt, Inc.,* the court concluded that California contribution statutes governing good faith settlements served the dual objectives of equitable sharing of damages among tortfeasors and of encouraging parties to settle. *Id.* at 494, 698 P.2d at 163, 213 Cal.Rptr. at 259–260. California courts implement these legislative goals by balancing various factors, such as "the amount paid in settlement, the allocation of settlement proceeds among plaintiffs, and a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial [,] * * * the financial conditions

and insurance policy limits of settling defendants, as well as the existence of collusion, fraud, or tortious conduct aimed to injure the interests of nonsettling defendants. * * * " *Id.* at 499, 698 P.2d at 166–167, 213 Cal.Rptr. at 263. Additionally, a good faith settlement is one which is within a "reasonable range of the settling tortfeasor's proportionate share of comparative liability * * *." *Id.*, 698 P.2d at 166, 213 Cal.Rptr. at 263.

A review of the pertinent California statutes reveals a similarity to the Ohio Joint Tortfeasors Act. Compare Cal.Code of Civ.Proc., Sections 875–880, with R.C. 2307.31 and 2307.32. Moreover, in the absence of Ohio law defining good faith under the contribution statute, there is colorable merit to Warner's argument that good faith under R.C. 2307.32(F) contemplates more than the absence of collusion or tortious intent. Since contribution statutes promote the equitable sharing of liability among joint tortfeasors, it seems just to demand that a settling tortfeasor purchase freedom from further suit only if that freedom does not come at the expense of a nonsettling defendant. To the extent it can be argued that equity should play no role in the context of the relationship between tortfeasors—since tortfeasors owe no fiduciary duty to each other—that argument pales in light of R.C. Chapter 1336. Given that R.C. 2307.31 creates a cause of action among tortfeasors, their relationship is arguably akin to that of creditor-debtor and requires more than the absence of intentional misconduct. Cf. R.C. 1336.03 and 1336.06.

Despite these reasons which support Warner's position, it is unnecessary for the resolution of this case to adopt the *Tech–Bilt, Inc.* factors as the standard for good faith under R.C. 2307.32(F). Whether good faith means simply the absence of collusion or requires an equitable sharing analysis, the settlement in this case meets either definition. As such, we decline to adopt the *Tech–Bilt, Inc.* approach to good faith under the facts before this court.

We reach this conclusion for a variety of reasons. First, a review of the pleadings in the record suggests a dubious basis for Warner's standing to contest the good faith determination. Warner's counterclaim against Grant does not specifically set forth a contribution claim. Rather, the counterclaim alleges claims sounding in primary negligence and for intentional misconduct which, if given a very liberal construction, can be construed to include a claim for contribution. Second, the record fails to reveal any direct action by plaintiff against Warner. Absent such suit, Warner could have no viable contribution claim against Grant premised on R.C. 2307.31. However, because none of the parties have raised these issues and in furtherance of the policy to decide cases on their merits, we may overlook these procedural irregularities and consider Warner's arguments.

■ Turning to the merits of the second assignment of error, the record compels us to find that the settlement was made in good faith, however that term is defined. The parties concede that collusion, fraud, or tortious conduct aimed to injure Warner's interests are not present. The record supports this concession, since the settlement was reached in arm's-length negotiations over a nine-month period under the supervision of the claims court and a federal judge.

Moreover, the record contains abundant evidence to support a finding that the $65,000,000 paid by Grant to plaintiff in settlement was equitable. There is evidence that Grant viewed plaintiff's claims as the least favorable of all claims arising from the ESM collapse. This evidence is bolstered by Grant's third-party contribution claims against the thirty-six third-party defendants on several theories of intentional and negligent wrongdoing. Additionally, the $65,000,000 settlement in this case, in comparison to the amounts paid by Grant in settling the non-Home State claims against it, is consistent with those settlements. The settlement also exhausted two-thirds of Grant's available insurance, an amount which is in line with the proportionate share of liability Warner asserts Grant would ultimately bear. Finally, given the procedural and substantive complexity of this litigation and the cost to Grant of pursuing this case to judgment, the $65,000,000 reflects an equitable adjustment of those factors. In short, the settlement is not so far " 'out of the ballpark' in relation to these factors as to be inconsistent with the * * * objectives of the statute. * * * " *Tech–Bilt, Inc., supra,* at 499–500, 698 P.2d at 167, 213 Cal.Rptr. at 263–264. The second assignment of error is overruled.

Under his final assignment of error, Warner asserts that this appeal is premature in that the trial court abused its discretion in certifying to this court the October 22, 1987 order pursuant to Civ.R. 54(B). It is Warner's position that the judgment was not final and that there was just reason for delay. As to the former, Warner maintains the claims court decided only one issue, but did not finally adjudicate the parties' claims. Warner also argues that just reason existed for delaying the entry of judgment since the court failed to ascertain the parties' relative degrees of fault to enable an appropriate analysis of the settling parties' good faith.

■ The analysis of a Civ.R. 54(B) certification is a two-step process. First, the court must determine whether the order is final for purposes of R.C. 2505.02. Second, certification requires a decision as to whether there is any just reason for delaying the entry of judgment. See *General Acc. Ins. Co. v. Insurance Co. of North America* (1989), 44 Ohio St.3d 17, 21, 540 N.E.2d 266, 271.

Clearly, the October 22, 1987 order affects a substantial right and effectively determines any claim for contribution against Grant. The presence of a good faith settlement bars a suit for contribution against the settling tortfeasor. R.C. 2307.32(F)(2). Since Warner asserts that he has a contribution claim against Grant which was extinguished by the finding of good faith, the judgment is final as to any such claim by Warner under the provisions of R.C. 2505.02.

Additionally, we cannot conclude, as Warner argues, that the finding of no just reason for delaying judgment constitutes an abuse of the trial court's discretion under the facts of this case. While the inclusion of Civ.R. 54(B) language may be erroneous where a contribution claim has not ripened, so that a settling tortfeasor's proportionate share of liability cannot be adequately assessed, any such error is nonprejudicial under the facts of this case. Even if it be conceded that the proportionate share theory governs good faith inquiries under R.C. 2307.32(F), application of that standard to this case results in the same conclusion whether judgment is finalized now or after Warner's contribution claim becomes enforceable. As we found under the second assignment of error, regardless of Warner's ultimate liability, if any, to plaintiff, Grant's payment of $65,000,000 in settlement of plaintiff's claims represents a good faith settlement, however that term is defined.

Finally, under the facts of this case, any claim for contribution asserted by Warner has been fully adjudicated. Plaintiff has filed no claim in this cause against Warner. Therefore, whatever merit there may be in waiting for the final adjudication of a plaintiff's claim against a joint tortfeasor in order to finalize a contribution claim filed by that tortfeasor in the same action, no direct claim by plaintiff against Warner is present in this case. There was no just reason for delaying judgment as to Warner. The third assignment of error is overruled.

Having overruled the three assignments of error, the judgment of the Court of Claims is affirmed.

*Judgment affirmed.*

WHITESIDE and REILLY, JJ., concur.