MAHATHIRAJ et al.

v.

COLUMBIA GAS OF OHIO, INC., Appellant;

Columbus Metropolitan Housing Authority et al., Appellees.

[Cite as *Mahathiraj v. Columbia Gas of Ohio, Inc.* (1992), 84 Ohio App.3d 554.]

Court of Appeals of Ohio,
Franklin County.

No. 92AP–907.

Decided Dec. 24, 1992.

*Earl, Warburton, Adams & Davis* and *Thomas L. Davis;* and *Stephen L. Hebenstreit,* for appellant Columbia Gas of Ohio, Inc.

*Robert E. Frost & Associates, Robert E. Frost* and *Mark A. Reynolds,* for appellee Columbus Metropolitan Housing Authority.

PEGGY BRYANT, Judge.

Defendant-appellant, Columbia Gas of Ohio, Inc. ("Columbia Gas"), appeals from a judgment of the Franklin County Court of Common Pleas granting the summary judgment motion of defendant-appellee, Columbus Metropolitan Housing Authority ("CMHA"), as to Columbia Gas' contribution and indemnity claims against CMHA.

The present litigation arises out of a natural gas explosion on July 19, 1989, in which plaintiffs allegedly were injured.

The facts submitted in the summary judgment proceedings in the trial court indicate that at approximately 2:00 a.m. on July 19, 1989, various individuals in stolen cars participated in a "demolition derby" in the Caldwell Place section of the Sawyer Manor housing complex operated by CMHA. As a result of these activities, one of the cars rammed into the side of a building located at 940 Caldwell Place and damaged some above-ground natural gas pipes located along the outside of the building. A large natural gas leak resulted. Columbus police officers at the Sawyer Manor complex reported the gas leak to a Columbia Gas dispatcher at approximately 2:05 a.m. The dispatcher relayed the information to

a nearby Columbia Gas customer service center, and a Columbia Gas service representative was sent to the scene. The service representative arrived at the complex at approximately 2:30 a.m.

The natural gas distribution system for the Sawyer Manor complex is jointly controlled by Columbia Gas and CMHA in what is termed a "master meter" system. Under this system, Columbia Gas initially meters gas, via Columbia Gas' gas lines, into a centrally located brick building, called the Brick House, that contains a master meter, a regulator and a central shut-off valve for the complex; CMHA then submeters the gas from the Brick House to individual apartment units at a lower "house" pressure via CMHA-owned gas lines. CMHA owns the Brick House, and Columbia Gas owns both the equipment inside the building as well as the lock to the building. Gas to the complex can be shut off at various points in the distribution system: at the central shut-off valve in the Brick House, at a three inch plug valve in a curb box belonging to Columbia Gas, and at various underground valves owned by CMHA located downstream from the Brick House.

When the Columbia Gas representative arrived at the complex, he noticed gas was leaking from a "meter riser," a pipe running from the ground to a meter located several feet above the ground on the outside of the apartment building that had been struck. He attempted unsuccessfully to shut off the gas. The record indicates the Columbia Gas representative initially sent to the complex was unfamiliar with the gas distribution system in place, and failed to recognize that the gas leak involved a master meter system rather than the more normal single service hookup for one apartment. Thus, although he had a key to the lock on the Brick House, he failed to unlock the building or investigate what was inside it; and, he was unable to find the curb box containing a shut-off valve, even after the dispatcher described its location to him. At 2:40 a.m. the first Columbia Gas representative requested assistance. The fire department contacted CMHA shortly before 3:00 a.m. and requested that CMHA's maintenance personnel also assist in locating the curb box.

A second Columbia Gas service representative arrived at approximately 3:10 a.m. and after about fifteen minutes located the curb box containing the shut-off valve. The second Columbia Gas representative lacked the tools required to shut off the valve, however, and radioed for further assistance at about 3:30 a.m. At approximately 3:35 a.m., a CMHA maintenance man arrived on the scene and stated that CMHA had a key for the shut-off valve, but that the key was kept outside the apartment complex in the CMHA office on Fifth Avenue. At 3:43 a.m., a large natural gas explosion occurred, destroying several apartment buildings on Caldwell Place and injuring several persons, including plaintiffs who were in their apartment at the time of the explosion. Seven minutes after the explosion occurred, a third Columbia Gas service representative arrived with the tools necessary to shut off the gas.

The main action in the present case commenced with plaintiffs' filing a complaint against Columbia Gas and CMHA for their conduct prior to the natural gas explosion at Sawyer Manor. After settlement negotiations and a mediation conference conducted by a court-appointed referee, plaintiffs settled their claims against CMHA on November 26, 1991 for approximately $25,000 and a release of CMHA from liability. CMHA subsequently filed a motion for summary judgment against Columbia Gas in the trial court, arguing that its good faith settlement with plaintiffs relieved it of any duty for contribution to Columbia Gas pursuant to R.C. 2307.32(F)(2).[1] The trial court agreed and granted CMHA's motion for summary judgment. Columbia Gas appeals therefrom, assigning the following errors:

"Assignment of Error No. 1

"The trial court erred in granting summary judgment to defendant, CMHA, on the cross-claim of Columbia Gas as to the issue of contribution.

"Assignment of Error No. 2

"The trial court erred, as to the cross-claim of Columbia Gas against CMHA, in failing to indicate what legal standard for evaluation of the existence of a 'good faith settlement' was being applied.

"Assignment of Error No. 3

"The trial court erred in granting summary judgment to defendant, CMHA, on the cross-claim of Columbia Gas as to the issue of indemnification.

"Assignment of Error No. 4

"The trial court erred, as to the cross-claim of Columbia Gas against CMHA, in failing to expressly consider and pass upon the issue of implied indemnification, as opposed to solely the undisputed issue of express indemnification."

■■■ Preliminarily, because Columbia Gas' appeal arises in the context of a summary judgment motion, pursuant to Civ.R. 56, the evidence must be construed most strongly in favor of the nonmoving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47. Summary judgment will be granted only if *no genuine issue of material fact exists, the moving party is entitled to judgment as a matter of law, and*

---

1. R.C. 2307.32(F) reads:

"When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or loss to person or property or the same wrongful death, the following apply:

"* * *

"(2) The release or covenant discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor."

reasonable minds can come to but one conclusion, which is adverse to the nonmoving party. *Id.* A motion for summary judgment forces the nonmoving party to produce evidence on any issue for which the party bears the burden at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus (citing *Celotex v. Catrett* [1986], 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, approved and followed).

■ In its first assignment of error, Columbia Gas asserts the trial court erred in granting summary judgment against Columbia Gas on its contribution claim against CMHA, and in its second assignment of error, Columbia Gas argues the court erred in failing to indicate what legal standard of "good faith" it applied to determine that a good faith settlement had been reached between plaintiffs and CMHA. Because the two assignments of error are interrelated, we address them jointly and the single issue they raise: whether plaintiffs and CMHA settled in "good faith" for purposes of R.C. 2307.32 so as to discharge CMHA from any liability for contribution.

Since R.C. 2307.32(F)(2) itself does not provide a definition of good faith, and noting that this court's prior discussion of good faith in *Harris v. Alexander Grant & Co.* (1990), 61 Ohio App.3d 172, 572 N.E.2d 226, considered the definition of good faith formulated by the California Supreme Court in *Tech–Bilt, Inc. v. Woodward Clyde & Assoc.* (1985), 38 Cal.3d 488, 213 Cal.Rptr. 256, 698 P.2d 159, Columbia Gas argues that this court now expressly should adopt the *Tech–Bilt* definition of good faith.

In *Tech–Bilt*, the California Supreme Court adopted a balancing test which considers a number of factors in determining whether a settlement between a plaintiff and one of the joint tortfeasors is made in good faith. Often termed a "reasonable range" test, one of the principal factors under *Tech–Bilt* is whether the amount paid in settlement is within the reasonable range of the settling tortfeasor's proportionate share of liability for the plaintiff's injuries. *Tech–Bilt* at 499, 213 Cal.Rptr. at 263, 698 P.2d at 166. Columbia Gas argues that under this standard the trial court's decision is erroneous because the amount paid to the plaintiffs in settlement is disproportionately low compared to the potential liability CMHA was likely to bear at trial.[2]

*Tech–Bilt's* emphasis on allocating potential proportionate liability amongst tortfeasors necessarily creates additional burdens for trial courts in conducting evidentiary hearings, or minitrials, to determine a party's likely proportionate liability. While the contribution statute at issue in *Tech–Bilt* specifically required

---

2. We note that even if we were to adopt the *Tech–Bilt* standard of good faith, and were to find that the plaintiffs' settlement was for a disproportionately low amount in comparison to CMHA's potential liability, it does not necessarily follow that the trial court's finding of good faith in the present case was erroneous. The *Tech–Bilt* court acknowledged that a showing of

that a court conduct a hearing on the issue of good faith at the request of an interested party, R.C. Chapter 2307 has no such hearing provision, and we are reluctant to impose such a requirement absent a statutory basis therefor.

Moreover, the *Tech–Bilt* standard would prove cumbersome, if not unworkable, in many cases because it forces courts to foresee whether a jury would find a particular party liable, and if liable, the proportion of liability the party would likely bear as well as the sum of damages the jury would award. Given the uncertainties inherent in jury trials, courts and commentators have displayed an understandable skepticism about the workability of legal standards dependent upon so much judicial guesswork. See, *e.g., Johnson v. Belleville Radiologists, Ltd.* (1991), 221 Ill.App.3d 100, 101, 163 Ill.Dec. 596, 598, 581 N.E.2d 750, 752 ("Just as '[i]t is virtually impossible to use an unknown factor, *i.e.* the jury's verdict, to test good faith prior to trial,' it is naive to suggest that the trial court has the ability to delve into the minds of the jurors and determine whether the settlement apportionment is in accord with the sums the jury would foreseeably award[.]" Citations omitted.); *Smith v. Texaco, Inc.* (1992), 232 Ill.App.3d 463, 469, 597 N.E.2d 750, 755 ("Illinois courts have consistently rejected challenges to goodfaith based upon alleged disparities between the value of settlements and settling tortfeasors' relative culpability for claimant's damages. It has been recognized that settlements may be substantially different from the results of litigation because damages are often speculative and the probability of liability uncertain[.]" Citations omitted.); Daniel Waltz, Comment, Total Equitable Indemnity Under Comparative Negligence: Anomaly or Necessity? (1986), 74 Cal.L.Rev. 1057, 1091 ("The reasonable range test can never be precise because of problems of valuation. Estimation of the likely size of the jury verdict and the proportion of a single defendant's fault must necessarily be inexact[.]"); but, see, *Tech–Bilt, supra,* 38 Cal.3d at 500, 213 Cal.Rptr. at 264, 698 P.2d at 167 (lists methods by which courts can reduce uncertainty in determining reasonable range).

Finally, apart from the uncertainties inherent in such hearing, the *Tech–Bilt* requirement may ultimately discourage parties from voluntarily settling cases because of the uncertainty and expense involved in defending settlements against proportionality claims. As the court in *Noyes v. Raymond* (1990), 28 Mass.App. Ct. 186, 189–190, 548 N.E.2d 196, 199, aptly observed:

"The goal of encouraging settlements may be achieved only to the extent that motions for discharge based upon settlements are routinely allowed, with extend-

---

bad faith is not necessarily " * * * 'established by a showing that a settling defendant paid less than his theoretical proportionate or fair share.' " *Tech–Bilt,* 38 Cal.3d at 499, 213 Cal.Rptr. at 263, 698 P.2d at 166 (citing *Dompeling v. Superior Court of Stanislaus Cty.* [1981], 117 Cal.App.3d 798, 810, 173 Cal.Rptr. 38, 45). Because of our disposition of this issue below, however, we do not directly address whether the present case involves such a situation.

ed hearings on the question of good faith the exception. If it were otherwise, a party seeking to avoid trial by settling a claim could rarely achieve that objective; either the issue of good faith would be the subject of a full trial or, as happened in this case, a defendant who settles with a plaintiff may, nevertheless, be forced to stand trial on the merits of the tort claim. Faced with such prospects, a defendant would have little incentive to enter into a settlement."

A more workable method of resolving disputes concerning good faith settlements in multiple tortfeasor cases places the decision of whether or not a settlement is made in good faith within the discretion of the trial court. *Dixon v. Northwestern Publishing Co.* (1988), 166 Ill.App.3d 745, 751–752, 117 Ill.Dec. 581, 585–586, 520 N.E.2d 932, 936–937; *Smith v. Texaco, Inc., supra.* In exercising its discretion, the court considers the totality of the circumstances to determine if a settlement has been reached in good faith. See *Ballweg v. Springfield* (1986), 114 Ill.2d 107, 102 Ill.Dec. 360, 499 N.E.2d 1373. While courts are free to consider the amount of a proposed settlement in comparison to the amount the party would likely be responsible for at trial, the comparison is only one of many factors that a court weighs in its totality of the circumstances analysis. See *Johnson, supra; Pritchard v. Swedishamerican Hosp.* (1990), 199 Ill.App.3d 990, 146 Ill.Dec. 46, 557 N.E.2d 988. Further, the trial court's discretion in determining the good faith of a settlement allows it to choose both the type of proceeding it will conduct to determine good faith in an individual case, *Dixon, supra,* as well as its evidentiary sources, including affidavits, depositions, and other discovery materials of record, or even evidence from an evidentiary hearing, if appropriate. *Johnson, supra.*

In the final analysis, a totality of the circumstances standard enables the trial court to consider the potential proportionate liability of the parties in cases where such determinations are appropriate, but does not require the court to consider it in every case or in cases where such calculations would be of little value in good faith determinations. As a result, parties have a greater incentive to settle than they would under a standard which forces them to defend their settlements whenever the mere allegation of a disproportionate settlement is made. At the same time, courts are free to police collusive settlements that unfairly saddle one tortfeasor with a disproportionate share of liability.

We recognize that the policy objectives served by joint tortfeasor contribution statutes of encouraging parties to settle their disputes out of court but also attempting to prevent liability from being allocated in an inequitable manner, often conflict with one another. *Dompeling, supra.* The legal standard of good faith found in R.C. 2307.32(F) is important because it determines whether the legislative goals of encouraging settlement and preventing unfairness are appropriately balanced: a standard of good faith that relies too heavily on the

proportion of liability borne by each party deters settlement because it enables non-settling parties to attack settlements by alleging that a settlement allocates liability disproportionately, while a standard that ignores proportionate liability runs the risk of purchasing certainty in settlements at the expense of tolerating collusive activity.

Therefore, a totality of the circumstances test should be applied in determining whether or not a settlement in a joint tortfeasor case is reached in "good faith" for purposes of R.C. 2307.32(F). In making such determinations, courts may consider the proportion and amount of liability the settling and nonsettling parties might respectively bear at trial, but are not specifically required to make proportionate liability calculations. Other factors courts may consider include, but are not limited to, whether the challenging party has demonstrated evidence indicating collusion, fraud or other tortious or wrongful conduct on the part of the settling parties. A court may determine the good faith of a settlement based solely upon the arguments of counsel, based upon affidavits, depositions, and other discovery materials of record, or after conducting an evidentiary hearing. The standard of review from such decisions is one of abuse of discretion.

■ Under the foregoing test, the trial court did not abuse its discretion in finding that plaintiffs and CMHA settled in good faith. The record in the present case lacks evidence of collusion, fraud, or other wrongful conduct on the part of the settling parties.[3] Aside from Columbia Gas' allegations that it fears it will suffer a disproportionate share of liability at trial, Columbia Gas has not pointed to any evidence in the record that indicates claims by other plaintiffs arising out of the same incident having been settled for amounts substantially different from the amount settled between CMHA and plaintiffs in the case herein. See *Noyes, supra,* 28 Mass.App.Ct. at 190, 548 N.E.2d at 199 (the fact that the amount of a settlement is low in comparison to the party's estimate of her own damages, by itself, is not material). Moreover, the negotiations between the parties were conducted under judicial supervision: a court-appointed referee held a mediation conference which all the parties attended, and the probate court approved the settlement agreement reached between CMHA and the plaintiffs, who were children. Under these facts, we cannot conclude that the trial court erred in finding that plaintiffs and CMHA entered into a good faith settlement.

---

**3.** Columbia Gas alleges that CMHA settled with the plaintiffs in the present case for "tactical" reasons and argues that such tactical settlements should be disfavored. All settlements are "tactical" in some sense, however. Implicit in the nature of the settlement process is the tactical decision a party makes between limiting one's liability through settlement or gambling on the possibility of greater or lesser liability should the case go to trial. *Johnson, supra,* 221 Ill.App.3d at 107, 163 Ill.Dec. at 602, 581 N.E.2d at 756. To the extent Columbia Gas is implicitly suggesting that CMHA's settlement is not only tactical, but collusive or wrongful, the record does not provide any evidence of collusion.

■ Columbia Gas additionally argues that the trial court erred because it did not expressly indicate the legal standard of good faith it applied. Initially, the only legal standard of good faith the trial court was bound to follow in the present case was our decision in *Harris, supra,* and the trial court's finding of good faith in the present case is consistent with the approach used in *Harris.* Moreover, Columbia Gas has not indicated how the trial court's failure to articulate its legal standard of good faith has prejudiced its rights. An appellant must demonstrate both error and prejudice to gain a reversal. *Smith v. Flesher* (1967), 12 Ohio St.2d 107, 41 O.O.2d 412, 233 N.E.2d 137, paragraph one of the syllabus.

Since Columbia Gas has failed to identify the existence of any genuine issue of material fact regarding the issue of "good faith," the trial court was correct in finding that the settlement between CMHA and plaintiffs barred any claim by Columbia Gas for contribution under R.C. 2307.32(F). Accordingly, summary judgment was appropriately entered and appellant's first and second assignments of error are overruled.

In its third and fourth assignments of error, Columbia Gas argues that the trial court erred in granting summary judgment against it on the issue of indemnification and in failing to address specifically the issue of implied indemnification.

Under R.C. 2307.31(D), the Contribution Among Joint Tortfeasors Act does not change existing law on the subject of indemnification.[4] Thus, Columbia Gas' argument must be examined under the common law of Ohio.

■ Indemnity arises from contract, express or implied, and is the right of a person who has been compelled to pay what another should have paid to require complete reimbursement. *Travelers Indemn. Co. v. Trowbridge* (1975), 41 Ohio St.2d 11, 70 O.O.2d 6, 321 N.E.2d 787, paragraph two of the syllabus; *Lattea v. Akron* (1982), 9 Ohio App.3d 118, 122, 9 OBR 182, 185, 458 N.E.2d 868, 872. The trial court decision states, and the parties agree, that no express contract of indemnity exists between the parties in the present case. Therefore, the dispositive question under the third and fourth assignments of error is whether Columbia Gas has a potential claim for implied indemnification in the present case.

■ Columbia Gas argues that it is entitled to implied indemnification based on a primary/secondary liability, or an active/passive negligence theory. Ohio law

---

4. R.C. 2307.31(D) states:

"This section does not impair any right of indemnity under existing law. If one tortfeasor is entitled to indemnity from another, the right of the indemnity obligee is for indemnity and not contribution, and the indemnity obligor is not entitled to contribution from the obligee for any portion of his indemnity obligation."

generally recognizes that implied indemnification is appropriate in certain limited circumstances where a party owes only secondary legal responsibilities and is passively negligent. *Lattea, supra,* 9 Ohio App.3d at 122, 9 OBR at 185, 458 N.E.2d at 872. Secondary liability generally arises in situations, like vicarious liability, where a relationship exists between the tortfeasors that permits one tortfeasor to be held liable for the consequences of the other's actions. *Collins v. Maki* (S.D.Ohio 1982), 2 OBR 497, 499; *Allstate Ins. Co. v. U.S. Assoc. Realty, Inc.* (1983), 11 Ohio App.3d 242, 246, 11 OBR 368, 372, 464 N.E.2d 169, 173. By contrast, a person is primarily liable through active negligence or through actual knowledge of a dangerous situation and acquiescence in the continuance thereof. *Lattea, supra,* 9 Ohio App.3d at 122, 9 OBR at 185, 458 N.E.2d at 872.

■ Thus, in order to qualify for indemnification, the party claiming the right must be merely passively negligent. Conversely, where two parties actively participate in the commission of a tort they are deemed concurrent or joint tortfeasors, and no right of indemnification exists between the two, although a right of contribution may be proper. *Id.; Travelers, supra,* 41 Ohio St.2d at 14, 70 O.O.2d at 8, 321 N.E.2d at 789; *Maryland Cas. Co. v. Frederick Co.* (1944), 142 Ohio St. 605, 613, 27 O.O. 529, 533, 53 N.E.2d 795, 799; *Allstate, supra,* 11 Ohio App.3d at 246, 11 OBR at 372, 464 N.E.2d at 173.

Columbia Gas claims that CMHA was guilty of primary and active negligence in failing to train adequately its maintenance personnel and in failing to observe certain federal regulatory standards for small gas distribution systems, like the one employed at Sawyer Manor. See, generally, Section 192.615(a) and (b), Title 49, C.F.R. While Columbia Gas persuasively alleges CMHA's negligence in handling the gas leak, Columbia Gas fails to establish that its own role was one of mere passive negligence so as to entitle it to indemnification. Indeed, the record is replete with instances of Columbia Gas' active misconduct in the chain of events that led to the gas explosion on July 19, 1989. Columbia Gas initially responded to the call from the police by sending a service representative who was unfamiliar with the gas distribution system in place at Sawyer Manor, and who was unable to locate the curb box shut-off valve. The second Columbia Gas service representative sent to the complex lacked the tools necessary to shut off the gas, and the third representative arrived too late to prevent the explosion. Finally, while Columbia Gas alleges CMHA was primarily liable based on CMHA's federal regulatory duties of care, similar regulatory obligations regarding proper emergency procedures in the event of a gas leak were arguably applicable to Columbia Gas as well. See Sections 192.615(a) and 192.13(c), Title 49, C.F.R.

Collectively, this set of facts demonstrates that Columbia Gas played an active, rather than a passive, role in the series of events prior to the gas explosion on

July 19, 1989. Whether CMHA's negligence was greater or lesser than Columbia Gas' in relative terms does not negate Columbia Gas' active tortfeasor status or create an implied indemnification situation. See *Collins, supra,* 2 OBR at 499 (difference in degrees of negligence between tortfeasors not a basis for active/passive indemnification). Construing the facts most strongly in Columbia Gas' favor, we conclude that Columbia Gas is precluded from raising an implied indemnification claim against CMHA because of its active negligence in the Sawyer Manor explosion.[5] The trial court correctly granted summary judgment against Columbia Gas on the issue of indemnification, and Columbia Gas' third and fourth assignments of error are overruled.

Having overruled all of Columbia Gas' assignments of error, we affirm the judgment of the trial court.

*Judgment affirmed.*

TYACK and DESHLER, JJ., concur.

---

5. On the implied indemnification issue, both parties in this case address the impact of this court's opinion in *Niemann v. Post Industries, Inc.* (1991), 68 Ohio App.3d 392, 588 N.E.2d 301, which arguably interprets R.C. 2307.32(F)(2) as precluding indemnification claims against parties to a good faith settlement. Because we find Columbia to be actively negligent we do not need to address the effect of *Niemann* on the indemnification claims raised in the present case.