**WHITNEY, Admr., et al.,**

v.

**HORRIGAN; Strong, Appellant; O'Bryan et al., Appellees.**

[Cite as *Whitney v. Horrigan* (1996), 112 Ohio App.3d 511.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 96API02–237.

Decided July 11, 1996.

512

*Manahan, Pietrykowski, Bamman & Delaney* and *H. William Bamman,* for appellant Samuel E. Strong.

*Betty D. Montgomery,* Attorney General, and *Marilena R. Walters,* Assistant Attorney General, for appellees Dale O'Bryan, M.D., and Medical College of Ohio.

———————

TYACK, Judge.

On August 30, 1991, Deborah A. Whitney, individually and as administrator of the Estate of Gregory Dane Whitney, and her husband, Gregory J. Whitney, filed a complaint in the Lucas County Court of Common Pleas against Terrance J. Horrigan, M.D., Dale O'Bryan, M.D., Samuel E. Strong, M.D., and Toledo Hospital. Essentially, the complaint was for negligence and wrongful death stemming from the care and treatment of Mrs. Whitney and the care and delivery of Gregory Dane Whitney by O'Bryan and Strong. Horrigan and O'Bryan were subsequently dismissed from this case.

On September 3, 1991, the same plaintiffs filed a similar complaint in the Court of Claims of Ohio against Dr. O'Bryan and, subsequently, the Medical College of Ohio ("MCO"). O'Bryan was a resident employed by MCO and on rotation to Toledo Hospital during all relevant times.

On June 7, 1994, Strong filed a third-party complaint in the Lucas County case against MCO and O'Bryan, seeking indemnification and contribution. On June 15, 1994, Strong filed a petition in the Court of Claims of Ohio, seeking removal of the Lucas County case to the Court of Claims. The case was then removed to the Court of Claims.

On December 22, 1994, the Whitneys settled their claims against MCO and its employees. The Whitneys also settled with Toledo Hospital. On September 8, 1995, MCO filed a motion for summary judgment against Strong, contending that he, in light of the settlement between MCO and the Whitneys, had no claim for indemnification or contribution. On January 25, 1996, the Court of Claims filed its decision and judgment entry, granting summary judgment in favor of MCO. Strong ("appellant") has appealed to this court, assigning two errors for our consideration:

"I. The trial court erred in granting summary judgment in favor of Medical College of Ohio on the claim of defendant/third-party plaintiff Samuel E. Strong, M.D., for indemnification.

"II. The trial court erred in granting summary judgment in favor of Medical College of Ohio on the claim of defendant/third-party plaintiff Samuel E. Strong, M.D., for contribution."

As a preliminary matter, we note that the issues raised in this appeal are in the context of the granting of a motion for summary judgment. Summary judgment is appropriate when, construing the facts most strongly in favor of the nonmoving party, there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47.

In his first assignment of error, appellant contends that summary judgment in favor of MCO as to his right to indemnification was inappropriate because genuine issues of material fact exist as to whether O'Bryan was solely negligent in this case. Appellant contends that he was merely passively negligent and, therefore, is entitled to indemnification from MCO, O'Bryan's principal. Indemnity arises from contract, express or implied, and is the right of a person, who has been compelled to pay what another should have paid, to require

complete reimbursement. *Travelers Indemn. Co. v. Trowbridge* (1975), 41 Ohio St.2d 11, 70 O.O.2d 6, 321 N.E.2d 787, paragraph two of the syllabus.

In this case, there is no express contract of indemnification; therefore, we must decide whether appellant has a potential claim for indemnification based upon an implied contract. Implied indemnification is appropriate when a party is secondarily liable and passively negligent. *Mahathiraj v. Columbia Gas of Ohio, Inc.* (1992), 84 Ohio App.3d 554, 563–564, 617 N.E.2d 737, 743. Secondary liability arises in situations where, like vicarious liability, a relationship exists between tortfeasors such that one tortfeasor may be held liable for the other's actions. *Id.* at 564, 617 N.E.2d at 743, citing *Allstate Ins. Co. v. U.S. Assoc. Realty, Inc.* (1983), 11 Ohio App.3d 242, 246, 11 OBR 368, 372, 464 N.E.2d 169, 173. Primary liability exists when one is actively negligent or has actual knowledge of a dangerous situation and acquiesces in the continuation thereof. *Mahathiraj,* 84 Ohio App.3d at 564, 617 N.E.2d at 743–744, citing *Lattea v. Akron* (1982), 9 Ohio App.3d 118, 122, 9 OBR 182, 185, 458 N.E.2d 868, 873. Hence, one must be merely passively negligent to have a right to indemnification, and where two parties actively participate in the commission of a tort, they are joint tortfeasors and no right of indemnification exists between the two. *Mahathiraj,* 84 Ohio App.3d at 564, 617 N.E.2d at 744, citing *Maryland Cas. Co. v. Frederick Co.* (1944), 142 Ohio St. 605, 613, 27 O.O. 529, 533, 53 N.E.2d 795, 799; *Travelers,* 41 Ohio St.2d at 14, 70 O.O.2d at 8, 321 N.E.2d at 789; *Allstate, supra.* In the case at bar, therefore, we must decide whether, applying the summary judgment standard, appellant was merely passively negligent. If appellant was actively negligent, he has no right of indemnification from MCO.

The evidence in the record consists mainly of the depositions of appellant, O'Bryan and Horrigan. As stated above, appellant contends that reasonable minds could conclude that the injuries sustained in this case were due solely to the negligence of O'Bryan. Appellant points to the affidavit of William Rayburn, M.D., wherein Rayburn states that appellant did not depart from any standard of care in his care and treatment of Mrs. Whitney and the decedent, Gregory Dane Whitney. However, our review of the record, particularly the depositions of appellant and O'Bryan, leads us to conclude that reasonable minds could come to but one conclusion: that appellant's role was such that he and O'Bryan were, if anything, joint tortfeasors and, thus, there was no implied indemnification.

The basic facts in this case are as follows. On September 1, 1990, at approximately 6:40 p.m., Mrs. Whitney was admitted to Toledo Hospital. Mrs. Whitney was twenty-seven weeks' pregnant and was experiencing high blood pressure, some bleeding, possible contractions, and possible premature labor. O'Bryan, a resident, was the first physician to see Mrs. Whitney. He took a history from Mrs. Whitney, performed a physical exam and ordered certain lab

work. Upon admission and generally throughout the course of the evening, the fetal heart tones were within the normal range. O'Bryan assessed Mrs. Whitney's condition, as is the normal practice of residents at Toledo Hospital and, at 9:45 p.m., paged appellant, who was the staff physician on duty that evening. Appellant saw Mrs. Whitney for the first time that evening at 9:50 p.m.

O'Bryan consulted appellant on Mrs. Whitney's condition. Appellant determined that she had severe toxemia, was in premature labor, was bleeding slightly, and had a diastolic pressure greater than one hundred ten. Appellant instructed O'Bryan to administer magnesium sulfate in order to control the hypertension. Mrs. Whitney's blood pressure did go down; however, at approximately 11:47 p.m., appellant was again paged as the fetal heart tones were down. Appellant saw Mrs. Whitney and determined that the fetal heart tone had been down for a few minutes and did not appear to be coming back up. Therefore, appellant made the decision to perform an emergency cesarean section.

At approximately 12:16 p.m., appellant delivered a live male infant; however, the infant died a short time later. In performing the cesarean section, appellant noted that the entire placenta was detached from the uterine wall. According to deposition testimony, there is no known cause of abruptio placentae. However, it is associated with hypertension. It occurs suddenly, and there is no way to prevent it. An ultrasound might show a blood clot behind the placenta; however, abruptions usually occur so suddenly that nothing is seen. An ultrasound on Mrs. Whitney had been performed earlier in the evening and, apparently, it showed nothing abnormal.

The facts above lead us to conclude that reasonable minds could come to but one conclusion—that, in the context of whether implied indemnification exists, appellant was actively negligent. Appellant was actively involved in the care of Mrs. Whitney and Gregory Dane Whitney. He was the staff physician that night, saw Mrs. Whitney, diagnosed her condition, ordered medication, and made the ultimate decision to perform and performed the cesarean section. The degree of appellant's negligence or his proportionate share of negligence as compared with O'Bryan's does not change appellant's joint tortfeasor status. See *Mahathiraj*, 84 Ohio App.3d at 565, 617 N.E.2d at 744. Because appellant could only be considered a joint tortfeasor, there was no implied contract of indemnification between himself and O'Bryan/MCO. Therefore, the trial court did not err in granting MCO's motion for summary judgment on the indemnity issue. Accordingly, appellant's first assignment of error is overruled.

■ In his second assignment of error, appellant contends that there are genuine issues of material fact regarding whether the settlement agreement between the Whitneys and MCO was made in good faith. R.C. 2307.32(F) applies and states:

"(F) When a release or a covenant not to sue or not to enforce judgment is given *in good faith* to one of two or more persons liable in tort for the same injury or loss to person or property or the same wrongful death, the following apply:

" \* \* \*

"(2) The release or covenant discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor." (Emphasis added).

Good faith, as used in R.C. 2307.32(F), is not defined. In *Mahathiraj*, 84 Ohio App.3d at 562, 617 N.E.2d at 742, this court stated that a totality of the circumstances test should be applied in determining whether a settlement was made in good faith under R.C. 2307.32(F).

■■ Appellant contends that the fact that MCO and the Whitneys settled for only $55,000, given the extent of O'Bryan's involvement and that this involved a wrongful death claim, raises a genuine issue as to whether the settlement was reached in good faith.[1] This court in *Mahathiraj* stated that courts may consider the proportion and amount of liability the settling and nonsettling tortfeasors may bear at trial in determining good faith. *Id.* However, this is one of many factors which also include evidence of fraud, collusion, or other wrongful conduct. *Id.*

The fact that the Whitneys and MCO settled for $55,000 is not sufficient to raise a genuine issue regarding the existence of good faith. Appellant points to no evidence of possible fraud, collusion or any other wrongful conduct on the part of the settling parties. The settlement was approved by the Court of Claims and the Probate Court of Allen County. There being no genuine issue of fact, appellant's second assignment is overruled.

Having overruled each of appellant's assignments of error, the judgment of the Court of Claims of Ohio is hereby affirmed.

*Judgment affirmed.*

BOWMAN and JOHN C. YOUNG, JJ., concur.

■■

---

1. Appellant also points out in his reply brief that since the filing of his brief, the Lucas County case of the Whitneys against appellant went to trial. The jury returned a verdict of $1,201,137.72 against appellant. First, the trial court obviously did not have this information available to it, and even if it did, the circumstances here are such that good faith could still have been properly found by the Court of Claims.