LATTEA, ADMR., APPELLEE, *v.* CITY OF AKRON, APPELLEE; JOHN G. RUHLIN CONSTRUCTION COMPANY, APPELLANT; THE STATE OF OHIO, APPELLEE.

(No. 82AP-65—Decided
December 23, 1982.)

*Mr. Glenn W. Morris,* for appellee
Lattea.

*Mr. Steven D. Bell* and *Mr. Edward J.
Reigler,* for appellee Akron.

*Buckingham, Doolittle & Burroughs
Co., L.P.A., Mr. William M. Oldham, Mr.
Orville L. Reed III* and *Mr. David P. Bert-
sch,* for appellant.

*Mr. William J. Brown,* attorney
general, *Mr. Robert Tongren* and *Mr.
Melvin D. Weinstein,* for appellee state of
Ohio.

WHITESIDE, P.J. This appeal arises
from an accident in which the west
sidewalk of the Grant Street Bridge in
Akron, Ohio, collapsed and fell onto In-
terstate 76, killing plaintiff's decedents,
Rev. and Mrs. John Barrickman. At the
time that the sidewalk collapsed, demoli-

tion work on the bridge was being carried out by defendant-appellant, John G. Ruhlin Construction Company (hereinafter "Ruhlin"), pursuant to a contract with the state of Ohio, Department of Transportation (hereinafter "State"). The plaintiff-appellee, Emlous Lattea, Administrator of the Estates of Rev. and Mrs. Barrickman, brought a wrongful death action in the Summit County Court of Common Pleas against Ruhlin and the city of Akron (hereinafter "Akron"). Defendant Ruhlin filed a third-party complaint against the state and, pursuant to R.C. 2743.03(E)(1), the action was transferred to the Court of Claims.

Defendant Ruhlin also filed a cross-claim against Akron, as did the state. Akron, in turn, filed cross-claims against the state and Ruhlin.

Defendants Ruhlin and Akron, with the consent of third-party defendant state, admitted negligence as to the claim of the Barrickman estates against defendants Ruhlin and Akron, reserving for future determination any rights and defenses on the various cross-claims and third-party complaints as between defendants and third-party defendant.

A jury trial was held solely on the issue of damages, resulting in a verdict for plaintiff estates of $1,006,864 jointly against Ruhlin and Akron.

A separate trial to the court was then held to determine how the $1,006,864 judgment was to be apportioned between defendant Akron, third-party defendant state and defendant Ruhlin.

Defendant Ruhlin appeals from the resultant trial court's holding that it was liable for the full amount of the judgment and raises six assignments of error, as follows:

"I. The trial court erred as a matter of law in holding that the City of Akron violated no legal duty by reason of having supplied false, inaccurate and misleading blueprints for use in the demolition of the Grant Street bridge.

"II. The trial court erred as a matter of law in holding that the Ohio Department of Transportation violated no legal duty by reason of having supplied false, inaccurate and misleading blueprints for use in the demolition of the Grant Street Bridge.

"III. The trial court erred as a matter of law in holding that the act of Ruhlin in cutting the top level of steel reinforcement bars was the sole proximate cause of the deaths of John and Patricia Barrickman.

"IV. The trial court erred as a matter of law in holding that the project supervisor and project inspector were only agents of the Ohio Department of Transportation.

"V. The trial court erred as a matter of law in failing to hold the City of Akron and the Ohio Department of Transportation liable by reason of their participation in the decision to cut the upper set of steel reinforcement bars.

"VI. The trial court erred as a matter of law in failing to hold the City of Akron jointly liable for the collapse of the bridge by reason of R.C. 723.01."

The Akron Grant Street Bridge runs in a northerly and southerly direction above Interstate 76. It was constructed in 1960-1961 by the National Engineering and Contracting Company pursuant to a contract with the state. As designed and constructed, the bridge had two cantilevered sidewalks on the east and west sides of the bridge. In a cantilevered design, part of each sidewalk rests on the bridge deck or slab, and part of the sidewalk extends out beyond the outermost edge of the bridge deck.

Those portions of the cantilevered sidewalks extending out beyond the edge of the bridge deck were intended to be supported primarily by two sets of steel reinforcing bars placed in each sidewalk, one row above the other. In the west sidewalk, there were also two rows of telephone conduit running through the sidewalk from north to south between the two sets of bars. The construction plans

provided that the steel bars should run in a transverse direction from the outermost edge of the western sidewalk to that portion of the sidewalk resting on the bridge deck, one set above the conduit and the other set below the conduit. As constructed, however, the lower level of reinforcing bars was cut off at the point where they were to have passed under the conduits.

Sixteen years after construction, defendant Akron and the state entered into a contract for necessary repairs to the Grant Street Bridge. As part of its share of the cost of the bridge repair, Akron agreed to assume and contribute one hundred percent of the cost of preparing the project plans. The bridge repair itself was, however, a state project.

The state contracted with defendant Ruhlin for the repair of the Grant Street Bridge in accordance with specifications the state prepared and project plans prepared by Akron but approved by the state. This contract provided that defendant Ruhlin was to dismantle and replace the entire bridge deck and sidewalks, although the method of so doing was left up to Ruhlin as was customary in the construction trade.

The plans submitted by Akron to the state and then submitted by the state to Ruhlin were inaccurate in that the plans showed two sets of reinforcing bars running through the west sidewalk. Relying upon the missing lower reinforcement bars to support the sidewalk, Ruhlin, while dismantling the bridge, purposefully cut the upper set of steel reinforcement bars which extended into the cantilevered concrete section of the west sidewalk. No scaffolding or supports were provided by Ruhlin underneath the sidewalk. With no support from the reinforcing bars, the cantilevered portion of the sidewalk fell onto Interstate 76 below, killing plaintiff's decedents.

The decision to cut the top level of reinforcement bars was made on the job site by two Ruhlin employees, with the ap-

proval of Randall Monteith, the Project Supervisor. Chuck Dowling, the Project Inspector, was also aware of the decision to cut the bars and observed Ruhlin employees as this aspect of the job progressed.

Monteith and Dowling were at the job site in order to see that the repair to the Grant Street Bridge was done in accordance with the plans and specifications and in a safe manner. Although their exact status was a matter of controversy in the case, the trial court stated in its findings of fact that:

"Randall Allison Monteith and Charles E. Dowling, regular employees of the City of Akron, were assigned to the Grant Street Bridge Project as 'loaned employees' or agents of the Ohio Department of Transportation for the entire period of their service on that project. They were answerable to and received their supervision, instructions and orders from supervisory employees of the Ohio Department of Transportation."

Ruhlin asserts that it is entitled to indemnification, or in the alternative contribution, from Akron and the state because they negligently provided misleading blueprints upon which Ruhlin relied in cutting the top level of reinforcement bars and because their agents Monteith and Dowling allowed Ruhlin to cut the top row of bars. Ruhlin additionally contends that it is entitled to indemnification or contribution from Akron by reason of its breach of its nondelegable duty under R.C. 723.01 to see that the highway was safe for travelers.

There is a difference between the two forms of reimbursement sought by Ruhlin which is described in *Travelers Indemnity Co.* v. *Trowbridge* (1975), 41 Ohio St. 2d 11 [70 O.O.2d 6], in the second paragraph of the syllabus, as follows:

"Contribution, when it exists, is the right of a person who has been compelled to pay what another should have paid in part to require partial (usually proportionate) reimbursement and arises from

principles of equity and natural justice. Indemnity, on the other hand, arises from contract, express or implied, and is the right of a person, who has been compelled to pay what another should have paid, to require complete reimbursement."

Indemnity, then, is the right of a person who is only secondarily liable to recover from the person primarily liable for proper expenditures paid to a third party injured through the violation of their common duties. A person is secondarily liable to a third party where his negligence is only passive and joins with active negligence of another to cause the injury. A person is primarily liable through active negligence or through actual knowledge of a dangerous situation and acquiescence in the continuance thereof. *Zanesville* v. *Fannan* (1895), 53 Ohio St. 605; *Morris* v. *Woodburn* (1897), 57 Ohio St. 330; *Bello* v. *Cleveland* (1922), 106 Ohio St. 94; *Larson* v. *Cleveland Railway Co.* (1943), 142 Ohio St. 20 [26 O.O. 228]; *Globe Indemnity Co.* v. *Schmitt* (1944), 142 Ohio St. 595 [27 O.O. 525]; *Maryland Casualty Co.* v. *Frederick Co.* (1944), 142 Ohio St. 605 [27 O.O. 529]; and *Albers* v. *Great Central Transport Corp.* (1945), 145 Ohio St. 129 [30 O.O. 34]. Cf. *Acheson* v. *Miller* (1853), 2 Ohio St. 203. Hence, where two persons actively participate in the commission of a tort they are concurrent tortfeasors, and no right of indemnification can exist between the two, although contribution may be proper.

At common law, there was no contribution between joint tortfeasors in Ohio. *Royal Indemnity Co.* v. *Becker* (1930), 122 Ohio St. 582; *Massachusetts Bonding & Ins. Co.* v. *Dingle-Clark Co.* (1943), 142 Ohio St. 346 [27 O.O. 265]. Effective in 1976, R.C. 2307.31(A) modified the common law and provides for contribution "* * * in favor of a tortfeasor who has paid more than his proportionate share of the common liability" with recovery "limited to the amount paid by him in excess of his proportionate share."

See *National Mut. Ins. Co.* v. *Whitmer* (1982), 70 Ohio St. 2d 149 [24 O.O.3d 248].

By its first three assignments of error, Ruhlin claims that Akron and the state are guilty of active or primary negligence for furnishing misleading blueprints upon which Ruhlin had a right to rely, while Ruhlin is chargeable only with passive or secondary negligence.

This contention is inconsistent with the trial court's finding of fact that "the collapse of the sidewalk, under the circumstances, was reasonably foreseeable by the John G. Ruhlin Construction Company." The trial court's factual finding is supported by the testimony of Ruhlin's own vice-president, Thomas Mudd, who admitted on cross-examination that a contractor exercising reasonable engineering and construction judgment would not have cut the top row of reinforcement bars in this case and would not have relied upon the lower set of reinforcement bars as support for the sidewalk. Robert Hawkins, Akron's expert engineering consultant, retained to provide an analysis of the bridge collapse, testified that the demolition procedure employed by Ruhlin was not consistent with accepted standards of engineering and construction practice. He stated that the cantilevered section should have been supported before proceeding because, once the top reinforcement bars were cut, so much concrete was removed that at the point of failure (the point where the cantilevered section broke away from the rest of the sidewalk), the concrete section was reduced to a point where it no longer had sufficient strength to carry the load of the sidewalk.

Such evidence is sufficient to support the trial court's conclusion that cutting the top reinforcement bars constituted active negligence on Ruhlin's part, irrespective of the faulty blueprints, because there was a risk of the sidewalk's falling even if the lower bars gave support as shown on the blueprints. Therefore, predicated upon this factual finding, the trial court's

conclusion that Ruhlin was not entitled to indemnity from Akron or the state by reason of their having furnished "false, inaccurate and misleading blueprints for use in the repair of the Grant Street Bridge" is not contrary to law.

However, there remains the issue of whether Akron or the state breached a duty to plaintiff's decedents, as members of the public, in furnishing the misleading blueprints, which could entitle Ruhlin to contribution from Akron or the state.

Akron has not raised the defense of sovereign immunity with respect to the blueprints. Nevertheless, the evidence supports the trial court's conclusion that Akron was not negligent in its preparation and submission of plans for the Grant Street Bridge. When Akron undertook the preparation of plans for the demolition and repair of the Grant Street Bridge, its engineers first went to the bridge site and verified the bridge's dimensions and measurements and then consulted the original plans and traced the cross section of the bridge and west sidewalk for use in the new plans. Uncontested expert testimony was provided by Robert Hawkins that such preparation of plans by the city met accepted standards of architectural and design practice.

Furthermore, to find Akron negligent for failing to warn that the plans did not depict the bridge "as built" would require knowledge or notice to Akron of the plans' inaccuracy. The trial court found that there was no evidence of any actual knowledge on Akron's part that the lower reinforcement bars were not as actually depicted on the blueprints. Nor does the evidence indicate constructive knowledge on the part of Akron. The absence of the lower bars was not apparent once the bridge was built. There was no reason for Akron to suspect absence of the lower bars — at least none that would not require Ruhlin to have the same suspicion. There is no implied warranty of the accuracy of plans which would make Akron liable to plaintiff's decedents. Although Ruhlin disagrees with the trial court's conclusion that there is no such warranty, either express or implied, of the correctness of plans, it cites no decision by an Ohio court creating such a warranty, and we have found none. Nor is there a basis for such an implied warranty. Cf. *Mitchem* v. *Johnson* (1966), 7 Ohio St. 2d 66 [36 O.O.2d 52].

Those cases from other jurisdictions which have considered the issue in situations involving actions by third parties for injuries suffered as a result of a contractor's reliance on defective plans supplied to him by the contractee hold that, no matter how the basis of liability is described, it amounts to no more than a claim of negligence in failing to prepare the plans with due care. *E.g., Audlane Lumber & Builders Supply, Inc.* v. *D. E. Britt Associates* (Fla. App. 1964), 168 So. 2d 333; *La Rossa* v. *Scientific Design Co.* (C.A. 7, 1968), 402 F. 2d 937. Cases cited by Ruhlin to support its theory of a warranty of accurate plans are inapplicable in that they do not involve injury to a third party but, instead, involve negligence on the part of the contractee in failing to prepare the plans with due care or in failing to warn of a dangerous condition within the contractee's knowledge. *E.g., Hollerbach* v. *United States* (1914), 233 U.S. 165; *Bradford Builders, Inc.* v. *Sears, Roebuck & Co.* (C.A. 5, 1959), 270 F. 2d 649.

In determining the potential liability of the state to plaintiff's decedents for injury resulting from the misleading blueprints, the question is whether the state was negligent in its review and submission of the plans. The trial court concluded, as a matter of law, that the state was not negligent in supplying Ruhlin the blueprints of the Grant Street Bridge furnished by Akron. This conclusion was based on its finding of fact that the state had no actual knowledge that the lower level of reinforcement bars was not as shown on the plans.

The trial court was correct in its finding that the state had no actual knowledge of the defect in the plans; however, Ruhlin correctly asserts that the evidence does not support the trial court's factual finding of no constructive knowledge on the part of the state. The state's constructive knowledge of the plans' inaccuracy is indicated by undisputed evidence in the record that authorization of its inspectors on the job site during the construction of the Grant Street Bridge was a prerequisite for any structural deviations or modifications from the construction plans, including the failure to install the lower set of steel reinforcement bars in the west sidewalk.

With such constructive knowledge, the state negligently performed a duty to the public to assure that the Grant Street Bridge was repaired in a safe manner.

Ruhlin's independent negligence in cutting the top reinforcement bars would not relieve the state of liability to plaintiff's decedents for furnishing misleading blueprints. Had Ruhlin been informed that the lower reinforcement bars were not as shown on the plans, it might not have cut the bars. The risk of the sidewalk falling created by cutting the upper bars even with the lower reinforcing bars present is greatly increased by the absence of the stability of such lower reinforcing bars.

Accordingly, the first assignment of error is not well-taken since Akron had no actual or constructive knowledge that the as-built plans of the Grant Street Bridge supplied by the state were inaccurate and was not otherwise negligent in relying thereon.

The second assignment of error is well-taken for the reason that, although the trial court found the state had no actual knowledge of the inaccuracy in the plans, there appears to be constructive knowledge on the part of the state, an issue which the trial court did not address, apparently assuming actual knowledge to be required. A party may be liable for supplying inaccurate plans where he knows or should have known that they are inaccurate.

The third assignment of error is well-taken for the same reason as the second, as well as for reasons that will be discussed with respect to the remaining assignments of error. The trial court's finding that Ruhlin's negligence was the sole proximate cause of the accident necessarily was predicated upon the finding that the state breached no duty with respect to the supplying of the inaccurate plans. The trial court erroneously found that the state had no information that would have alerted it to the inaccuracy in the as-built plans. While this finding is correct as to Akron, for the reasons we have previously noted, there remains a factual issue of constructive knowledge on the part of the state because of its activity in connection with the original construction of the Grant Street Bridge and the preparation of the as-built plans.

By the fourth assignment of error, Ruhlin contends the trial court erred in finding that the project supervisor and inspector were agents only of the state. The trial court found as a matter of law that these employees of Akron were loaned servants of the state. Thus, the effect of the trial court's holding was that, pursuant to the loaned-servant doctrine, Akron could not be liable for negligence of these employees. Ruhlin contends, however, that the two employees were agents for both Akron and the state. The loaned-servant doctrine is well-stated in the fourth paragraph of the syllabus of *Halkias* v. *Wilkoff Co.* (1943), 141 Ohio St. 139 [20 O.O. 257], as follows:

"When one party loans his servant to another for a particular employment in the business and under the direction of the latter, the servant, for anything done in that employment, must be regarded as the servant of the party to whom he is loaned, although he remains the general servant of the party who loaned him."

Technically, then, Monteith and Dowl-

ing could have been performing acts on behalf of both the city and the state, but the important question for the purpose of allocating vicarious tort liability between the two employers is on whose behalf were Monteith and Dowling acting when they participated in Ruhlin's decision to sever the upper level of reinforcement bars in the west sidewalk of the Grant Street Bridge.

There was ample evidence supporting the trial court's factual finding that Monteith and Dowling were loaned employees or agents of the state, and no issue is raised by any party contending that the trial court erred in this respect. Rather, defendant Ruhlin's contention is that, under the facts of this case, the employees continued to act as employees and agents of Akron and, thus, were acting on behalf of both Akron and the state at all pertinent times. Confusion in this regard is created by the trial court's finding that Monteith and Dowling "were answerable to and received their supervision, and instructions and orders from supervisory employees of the Ohio Department of Transportation." The evidence indicates that Monteith and Dowling made reports both to Akron's bridge project supervisor, Thoenen, as well as to the state's area engineer, Zerby. Thoenen testified that he also reported to Zerby with respect to his duties in connection with this particular bridge project. He did not, however, spend full time on this project as did Monteith and Dowling. Thoenen testified that, in connection with this project, he was "to oversee the construction and answer to the State of Ohio," with Zerby being his supervisor. Although the trial court did not directly refer to Thoenen, presumably, the trial court considered him a state supervisory employee with respect to his supervision of Monteith and Dowling during the course of the project.

In any event, the trial court's finding is supported by evidence. Defendant Ruhlin's contention of joint control of Monteith and Dowling by Akron and the state was not a finding required by the evidence, even assuming that it would be a reasonable finding therefrom. The fourth assignment of error is not well-taken.

The fifth assignment of error raises the issue of whether Monteith and Dowling were negligent in allowing defendant Ruhlin to proceed to cut the upper set of bars. We agree with the trial court that, if the cutting of the upper set of bars constitutes negligence on the part of the contractor, it naturally follows that the project supervisor and the project inspector had a duty to prevent defendant Ruhlin from acting in such a negligent manner, creating a hazard and danger to travelers below. The trial court, however, found as a matter of law that it was unnecessary to make a finding as to whether Monteith and Dowling were negligent in connection with the cutting of the bars, although noting that "their responsibility was to the Ohio Department of Transportation and the general public."

With respect to defendant Ruhlin's claim for indemnification, the trial court was correct since it relied upon the fact that Ruhlin had an independent duty under the contract and is responsible for its own acts of negligence. That, however, is not the issue with respect to the claim for contribution predicated upon the state being a joint tortfeasor with defendant Ruhlin.

The trial court found that Monteith and Dowling had a right and authority after consultation with the state "to stop Ruhlin's work if it believed that Ruhlin was performing the work in an unsafe manner, endangering the public." But the trial court then found that, under the contract between the state and Ruhlin "they had no duty or obligation to stop Ruhlin nor to protect Ruhlin from its own negligent acts."

While the conclusions of the trial court are correct as far as they go, they have no bearing upon the issue of whether

the state is a joint tortfeasor. Here we are not concerned with a duty to protect Ruhlin from its own negligent acts but, rather, are concerned with the duty of the state, acting through Monteith and Dowling, to protect the public from dangerous activity carried on by a state contractor, which the state, under the contract, has a right to stop and prevent. There is no conceivable basis for finding that the state has no duty to protect the traveling public on a highway beneath a bridge from negligence of a contractor which will cause the bridge to collapse where the state has knowledge of the negligence and a right and opportunity to prevent the contractor from performing the negligent act.

Thus, the state, through its agents, knew or should have known, as should Ruhlin, of the risk of the sidewalk collapsing when the upper reinforcement bars were cut, and it had it within its power to protect the public by stopping Ruhlin's work until adequate safety precautions were taken. Under such circumstances, the state is *in pari delicto* with the contractor in the actual commission of the tort. See *Massachusetts Bonding & Ins. Co.* v. *Dingle-Clark Co.* (1943), 142 Ohio St. 346 [27 O.O. 265].

Although the trial court did not use the terminology, apparently it felt that Ruhlin was primarily liable, and the state could be only secondarily liable. However, as held in *Massachusetts Bonding, supra,* the employer of an independent contractor is not entitled to indemnification but is independently negligent if he both knew of the dangerous situation created by the contractor's work and acquiesced in its continuance or performance. That is the situation here involved since the state had equal knowledge with Ruhlin as to the danger inherent in cutting the bars and had an independent duty to the public to avoid the creation of such a dangerous and hazardous situation for the traveling public.

Thus, the fifth assignment of error is well-taken with respect to the state but is not well-taken with respect to Akron for the same reasons that the fourth assignment of error is not well-taken.

The last assignment of error is directed solely at the liability of Akron, with Ruhlin contending that Akron was independently negligent for violation of R.C. 723.01. We agree.

R.C. 723.01 requires a municipality to keep its streets open, in repair and free from nuisance. A violation of this duty imposes tort liability upon the municipality. In the application of R.C. 723.01, we are not concerned with travel on the bridge but, instead, with travel on the highway beneath. Unfortunately, the trial court's findings of fact and conclusions of law do not directly address the R.C. 723.01 issue, although it is discussed in the court's opinion, concluding with the statement that:

"The liability of a municipality pursuant to Revised Code Section 723.01, as is noted above, extends only to those persons injured, and a strict construction of that statute dictates that the Ruhlin Construction Company has no standing to bring a 723.01 claim against the City of Akron, for the Ruhlin Construction Company is not within the class of persons protected by the statute."

Apparently, this is a predicate for the trial court's failure to further consider R.C. 723.01 and make pertinent factual determinations relevant thereto. However, this is not a case wherein Ruhlin is attempting to recover from Akron for a violation of R.C. 723.01. Rather, Ruhlin is attempting to obtain contribution from Akron for violation of its R.C. 723.01 duty to the Barrickmans as travelers on the highway. The trial court made no determination, factual or otherwise, of the issue actually presented, which is whether Akron violated its R.C. 723.01 duty to the Barrickmans and, if so, whether Akron is an independent, joint or concurrent tortfeasor with Ruhlin.

The record contains ample evidence to permit a factual finding that Akron violated its R.C. 723.01 duty to the traveling public in permitting the bridge demolition, including the cutting of the steel

reinforcement bars supporting the cantilevered section of sidewalk, to proceed without taking proper precautions for the protection of the traveling public beneath.

There is evidence that Akron, through its employees, even though some of them were loaned to the state, had knowledge that the steel reinforcement bars were being cut. There was evidence that, prior to the fall of the west sidewalk of the Grant Street Bridge, some difficulty had been encountered during demolition of the bridge through small pieces of concrete falling onto the highway below. However, the only protection to the traveling public was the installation of some tarpaulins or plywood to catch the falling debris. In addition, the city's expert witness testified that the cause of the fall of the cantilevered section of the sidewalk was the removal of concrete to such an extent that the concrete section that remained at the point of failure was reduced to an unsafe level. He further testified that, had the bottom reinforcing steel bars been completely imbedded in concrete, it is questionable whether the sidewalk would have fallen, but because the imbedment of the reinforcing steel would have been interrupted by conduit, it is speculative as to what would have happened had the bottom reinforcing steel bars been in place.

In any event, the trial court erred in not reaching and determining whether the city failed to perform its R.C. 723.01 duty to protect the public from both the inherent and created dangers involved in the project. For this reason and to this extent, the sixth assignment or error is well-taken.

Contribution between joint or concurrent tortfeasors is to be determined in accordance with R.C. 2307.31. Thus, Ruhlin is entitled to recover from the state and Akron only to the extent that Ruhlin has paid more than its proportionate share of the common liability. Its recovery is limited to the amount it paid in excess of its proportionate share, with each the state and Akron required to pay its proportionate share of the liability. This involves essentially a question of proximate causation; that is, the degree to which the negligence of each was a proximate cause of the occurrence and deaths.

Even though the state was negligent, its negligence could conceivably have contributed only to a small degree as a cause of the injuries. Accordingly, it is necessary to remand this case to the trial court to make the requisite factual determination as to the extent of contribution that Ruhlin is entitled from the state dependent upon the degree to which the state's negligence was an independent proximate cause of the injuries.

As to Akron, there remains a determination of the R.C. 723.01 issue upon its merits. It would appear that Akron would be liable pursuant to R.C. 723.01 to the Barrickman estates. Therefore, the question will be whether there is independent negligence of Akron, for which it would not be entitled to indemnification from Ruhlin under the Rule of *Massachusetts Bonding, supra.* Only when one party is entitled to indemnification from another joint or concurrent tortfeasor is he relieved from responsibility for contribution pursuant to R.C. 2307.31(D), which provides that:

"* * * Where one tortfeasor is entitled to indemnity from another * * * the indemnity obligor is not entitled to contribution from the obligee for any portion of his indemnity obligation."

For the foregoing reasons, the first and fourth assignments of error are overruled, the second, third, fifth and sixth assignments of error are sustained for the reasons and to the extent indicated; and the judgment of the Court of Claims is reversed; and this cause is remanded to that court for further proceedings in accordance with law consistent with this opinion.

*Judgment reversed
and cause remanded.*

McCormac and Moyer, JJ., concur.