[Cite as *Freedom Banc Mtge. Servs., Inc. v. Cincinnati Ins. Co.*, 2014-Ohio-226.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Freedom Banc Mortgage Services, Inc., | : | |
| Plaintiff-Appellant, | : | |
| v. | : | No. 13AP-400 |
| | | (C.P.C. No. 12CVH-09-11799) |
| Cincinnati Insurance Company, | : | |
| Defendant-Appellee. | : | (REGULAR CALENDAR) |

D E C I S I O N

Rendered on January 23, 2014

*Crabbe, Brown & James*, and *Christina Corl*; *Scott Elliot Smith, LPA*, and *Scott E. Smith*, for appellant.

*Smith, Rolfes & Skavdahl Company, L.P.A.*, and *William Scott Lavelle*; *Beau K. Rymers*, for appellee.

APPEAL from the Franklin County Court of Common Pleas

CONNOR, J.

{¶ 1} Plaintiff-appellant, Freedom Banc Mortgage Services, Inc. ("Freedom"), appeals from a judgment of the Franklin County Court of Common Pleas granting the Civ.R. 12(C) motion of defendant-appellee, Cincinnati Insurance Company ("Cincinnati"). Freedom presents the following sole assignment of error for our review:

> THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING APPELLEE'S MOTION FOR JUDGMENT ON THE PLEADINGS, BECAUSE THE COURT IGNORED ALLEGATIONS IN THE COMPLAINT WHICH PLACED THE APPELLANT'S LOSS WITHIN THE LIMITATIONS PERIOD CONTAINED IN THE POLICY OF INSURANCE.

{¶ 2} Because the trial court correctly determined that Freedom did not file its complaint within the contractual limitations period, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 3} Freedom filed a complaint against Cincinnati on September 18, 2012. Freedom noted in the complaint that Cincinnati insured Freedom pursuant to a policy of commercial property coverage ("policy"). The policy provided coverage for direct loss of business property, including loss resulting from interruption of computer services or loss of electronic data.

{¶ 4} In the complaint, Freedom asserted that it began experiencing computer problems on August 8, 2010. Freedom asserted that its "computer problems increased in severity, peaking on August 18, 2010," which "resulted in Freedom Bank's servers and computers to be inoperable." (Complaint, ¶ 7.) As a result of the inoperable computers and servers, Freedom experienced a loss of business, productivity, and revenue. Freedom alleged that "[b]y December of 2010, Freedom * * * was no longer able to conduct business." (Complaint, ¶ 9.) Freedom contacted Cincinnati on March 15, 2011 about filing a claim for the losses resulting from its computer problems. Cincinnati denied Freedom's claim on October 5, 2011. Freedom asserted claims against Cincinnati for breach of contract, unjust enrichment, bad faith, and fraud.

{¶ 5} Cincinnati filed an answer to the complaint on October 22, 2012. On October 23, 2012, Cincinnati filed a Civ.R. 12(C) motion for judgment on the pleadings. In the motion, Cincinnati noted that the policy provided that no one could bring a legal action against Cincinnati under the policy, unless the action was brought within two years "after the date on which the direct physical 'loss' occurred." (Policy, Commercial Property Conditions, Section D(2).) Cincinnati asserted that Freedom had alleged in the complaint that its direct physical loss occurred on August 8, 2010; rendering Freedom's September 18, 2012 complaint filed outside the two-year time limit.

{¶ 6} On November 8, 2012, Freedom filed a memorandum in opposition to Cincinnati's motion for judgment on the pleadings. In its memorandum, Freedom asserted it had alleged in the complaint that its "[l]osses were not realized until December, 2010," such that Freedom had timely filed the September 18, 2012

complaint. (Memorandum in Opposition, 2.) Cincinnati filed a reply in support of its motion for judgment on the pleadings on November 16, 2012.

{¶ 7} On April 9, 2013, the court issued a decision and order granting Cincinnati's motion for judgment on the pleadings. The court determined that the limitations period provided for in the policy "clearly require[d] that any suit brought against [Cincinnati] must be brought within two years of the loss." (Decision and Order, 3.) The court noted that Freedom had alleged "on the face of its complaint that its loss occurred, at the latest, on August 18, 2010 (the date upon which the computer problems 'peaked')." (Decision and Order, 3.) Accordingly, the court found that Freedom had failed to file its complaint within two years of the date of loss, and granted Cincinnati's motion for judgment on the pleadings.

## II. ASSIGNMENT OF ERROR

{¶ 8} Under Civ.R. 12(C), a party may file a motion for judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay the trial." *Franks v. Ohio Dept. of Rehab. & Corr.,* 195 Ohio App.3d 114, 2011-Ohio-2048, ¶ 5 (10th Dist.). In ruling on the motion for judgment on the pleadings, the court is permitted to consider both the complaint and answer. *State ex rel. Midwest Pride IV, Inc. v. Pontious,* 75 Ohio St.3d 565, 570 (1996). When presented with such a motion, a court must construe all the material allegations of the complaint as true, and must draw all reasonable inferences in favor of the non-moving party. *Id.,* citing *Peterson v. Teodosio,* 34 Ohio St.2d 161, 165 (1973); *Whaley v. Franklin Cty. Bd. of Commrs.,* 92 Ohio St.3d 574, 581 (2001). The court will grant the motion if it finds, beyond doubt, that the plaintiff can prove no set of facts in support of the claim(s) that would entitle him or her to relief. *Midwest Pride IV* at 570.

{¶ 9} A motion for judgment on the pleadings tests the allegations of the complaint and presents a question of law. *Peterson* at 166, citing *Conant v. Johnson,* 1 Ohio App.2d 133 (4th Dist.1964). Thus, our review of a decision to grant judgment on the pleadings is de novo. *See Rayess v. Educational Comm. for Foreign Med. Graduates,* 134 Ohio St.3d 509, 2012-Ohio-5676, ¶ 18, citing *Perrysburg Twp. v. Rossford,* 103 Ohio St.3d 79, 2004-Ohio-4362, ¶ 5.

{¶ 10} The issue in the instant action resolves to whether, construing the factual allegations in the complaint in Freedom's favor, Freedom filed its complaint within the two-year contractual limitations period. Initially, we observe that "parties to a contract may validly limit the time for bringing an action on a contract to a period that is shorter than the general statute of limitations for a written contract, as long as the shorter period is a reasonable one." *Sarmiento v. Grange Mut. Cas. Co.*, 106 Ohio St.3d 403, 2005-Ohio-5410, ¶ 11, citing *Miller v. Progressive Cas. Ins. Co.*, 69 Ohio St.3d 619, 624 (1994), and *Colvin v. Globe Am. Cas. Co.*, 69 Ohio St.2d 293, 295 (1982), overruled on other grounds by *Miller*. *See* R.C. 2305.06 (15-year statutory limitations period for written contracts). Freedom does not contend that the two-year limitations period is unreasonable. *Compare Angel v. Reed*, 119 Ohio St.3d 73, 2008-Ohio-3193, ¶ 13 (finding a two-year contractual limitations period to be enforceable). Accordingly, we find the two-year contractual limitations period reasonable and enforceable.

{¶ 11} Freedom asserts that it alleged in the complaint "that its losses *continued up* to December 2010," such that the court should have "construed the facts pled in the Complaint to demonstrate that the loss continued up to the time that Appellant was forced to close its doors." (Emphasis added.) (Appellant's brief, 5, 6.) Freedom asserts the trial court erred in using the August 18, 2010 date as the date on which the direct physical loss occurred.

{¶ 12} The policy provided that Freedom could not bring a legal action against Cincinnati unless the action was "brought within 2 years after the date on which the direct physical 'loss' occurred." (Policy, Commercial Property Conditions, Section D(2).) The policy defines "loss" as "accidental loss or damage." (Policy, Commercial Property Conditions, Section J(1).) The policy does not further define the phrase "direct physical loss."

{¶ 13} In *Bethel Village Condominium Assn. v. Republic-Franklin Ins. Co.*, 10th Dist. No. 06AP-691, 2007-Ohio-546, this court reviewed a similar contractual limitations period contained in a policy of insurance. In *Bethel*, the insured's property was damaged in a hailstorm on April 20, 2003, and the insurance policy provided that the insured could not bring an action against the insurer unless "[t]he action [was]

brought within 2 years after the date on which the direct physical loss or damage occurred." *Id.* at ¶ 13. In construing the provision, we noted as follows:

> "The first general maxim of interpretation * * * is, that it is not allowable to interpret what has no need of interpretation." *Lawler v. Burt* (1857), 7 Ohio St. 340, 350. If a term is clear and unambiguous, "* * * this court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 246 * * *. In the absence of ambiguity, therefore, the terms of the policy must simply be applied " '* * * according to its terms without engaging in construction * * *.' " *Hartford Ins. Co. v. Occidental Fire & Cas. Co.* (C.A.7, 1990), 908 F.2d 235, 238, quoting *Arkwright-Boston Mfrs. v. Wausau Paper Mills Co.* (C.A.7, 1987), 818 F.2d 591, 594.

*Id.* ¶ 10, quoting *Santana v. Auto Owners Ins. Co.*, 91 Ohio App.3d 490, 494 (6th Dist.1993).

{¶ 14} In *Bethel,* we concluded that the contractual limitations provision was not ambiguous. Under the plain wording of the contract, the "appellant was required to file suit against appellee within two years following the hailstorm damage that occurred on April 20, 2003." *Id.* at ¶ 20. Accordingly, as the insured did not file the lawsuit until February 6, 2006, we found the trial court had correctly granted the insurer's motion to dismiss the complaint. *See also Figetakis v. Owners Ins. Comp.*, 9th Dist. No. 22874, 2006-Ohio-918, ¶ 14-15 (where a contractual limitations provision obligated an insured to bring a lawsuit against the insurer "within one year after the loss or damage occurs," the court concluded that the "cause of action for coverage under the Insurance Policy accrued on the date the damage occurred" and not when the insurance company denied the claim for coverage).

{¶ 15} Freedom does not allege that the limitations provision is ambiguous, and we conclude that the policy is unambiguous. The policy provides that an insured must file a lawsuit within two years of the date on which the insured property was directly lost or damaged. The date of direct physical loss is not tied to the date on which business operations ultimately cease. Rather, the date of direct physical loss is the date on which the loss or damage to the insured property occurs.

{¶ 16} Freedom asserts that, because it alleged in the complaint that its losses continued up until December 2010, the trial court should have construed December 2010 as the date on which the direct physical loss occurred. We disagree.  Freedom pled the following relevant facts in its complaint:

> 6. On or about August 8, 2010, Freedom Ban[c] experienced computer problems in the form of its servers operating very slowly and a PC used by Freedom Ban[c] President, Stephen Harris, being frequently inoperable.
>
> 7. During the week of August 14, 2010, Freedom Ban[c]'s computer problems increased in severity, peaking on August 18, 2010. This resulted in Freedom Ban[c]'s servers and computers to be inoperable. After hiring the services of several computer experts, Freedom Ban[c] learned that their computer problems were the result of outside individual's unauthorized intrusions on Freedom Ban[c]'s computers and servers and their use and remote installation of nefarious programs intended on causing harm to Freedom Ban[c], commonly known as "computer hacking."
>
> 8. As a result of Freedom Ban[c]'s computer and server failure, Freedom Ban[c] experienced loss of business, productivity and revenue.
>
> 9. By December of 2010, Freedom Ban[c] was longer able to conduct business.

(Complaint, ¶ 6-9.)

{¶ 17} Freedom alleged in the complaint that the computer problems began on August 8, 2010, then increased in severity the following week, peaking on August 18, 2010.  Freedom then asserts that "[t]his," i.e. the computer problems which peaked on August 18, 2010, resulted in Freedom's servers and computers being inoperable.  The inoperability of Freedom's computers and servers resulted in a loss of business, productivity, and revenue.  Thus, the direct physical loss at issue herein occurred when Freedom's computers and servers became inoperable.

{¶ 18} The word "peak" means "the highest or most important point or level" or the "maximum point, degree, or volume of anything." *The Random House Dictionary of the English Language*, 1426 (2d Ed.1987).  By stating that the computer problems

peaked on August 18, 2010, Freedom alleged that August 18, 2010 was the height of the computer problems, or the maximum point of inoperability of its computers and servers. As such, construing the factual allegations in the complaint in Freedom's favor, we must find that the date of direct physical loss was August 18, 2010: the date on which Freedom's computer problems peaked and Freedom's computers and servers became inoperable. Notably, although Freedom alleged in the complaint that it went out of business in December of 2010, there is no allegation of direct physical loss or damage to business property occurring at that time.

{¶ 19} As Freedom alleged in the complaint that the date of direct physical loss occurred on August 18, 2010, Freedom's September 18, 2012 complaint was filed beyond the two-year contractual limitations period. As such, the trial court correctly granted Cincinnati's Civ.R. 12(C) motion for judgment on the pleadings.

## III. DISPOSITION

{¶ 20} Based on the foregoing, Freedom's sole assignment of error is overruled. Having overruled Freedom's assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK and DORRIAN, JJ., concur.
_____