[Cite as *Goscenski v. Ohio Dept. of Transp.*, 2014-Ohio-3426.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Joseph Goscenski, Jr. et al., | : | |
| Plaintiffs-Appellants, | : | |
| | | No. 13AP-585 |
| v. | : | (Ct. of Cl. No. 2009-09205) |
| Ohio Department of Transportation, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on August 7, 2014

*Reminger Co., L.P.A.*, *James O'Connor* and *Jonathan H. Krol*, for appellants.

*Michael DeWine*, Attorney General, *William C. Becker* and *Emily M. Simmons*, for appellee.

APPEAL from the Court of Claims of Ohio

KLATT, J.

{¶ 1} Plaintiffs-appellants, Joseph Goscenski, Jr.; George Wm. Morgan, Jr., & Company ("Morgan Trucking"); American Casualty Company of Reading, PA; and Continental Casualty Company, appeal a judgment of the Court of Claims of Ohio that dismissed their claim for indemnification against defendant-appellee, the Ohio Department of Transportation ("ODOT"). For the following reasons, we affirm that judgment.

{¶ 2} In their complaint, plaintiffs alleged that Morgan Trucking employed Goscenski and maintained automobile insurance through American Casualty Company and Continental Casualty Company. On March 11, 2008 at approximately 7:00 a.m.,

Goscenski was driving a truck owned by Morgan Trucking south on State Route 165 in Columbiana County, Ohio.  Goscenski struck one or more potholes, which caused him to lose control over the truck.  Goscenski crossed over the centerline and struck an automobile in the opposite lane.  The collision killed Pauline J. Miller, the driver of the automobile.

{¶ 3}  Plaintiffs' complaint asserted two claims against ODOT:  negligence and indemnification.  In support of their negligence claim, plaintiffs contended that ODOT breached its duty to repair and remedy the pothole(s) and that breach proximately caused the collision between Goscenski and Miller.  Goscenski and Morgan Trucking sought damages for the injuries they suffered as a result of the collision.  In support of their indemnification claim, plaintiffs alleged that ODOT's negligence proximately caused the damages that Miller sustained.  Plaintiffs also alleged that their liability to Miller was "merely secondary and passive as compared to the active and primary negligence and liability of ODOT."  (R. 1, at ¶ 17.)  Plaintiffs claimed that they were entitled to indemnification from ODOT for all sums they paid to Miller.

{¶ 4}  ODOT answered the complaint and then, with leave of court, amended its answer to add additional defenses.  After filing its amended answer, ODOT moved to dismiss plaintiffs' indemnification claim pursuant to Civ.R. 12(C).  The trial court granted that motion.

{¶ 5}  A trial proceeded as to whether ODOT was liable for negligence.  The trial court determined that Goscenski and Morgan Trucking proved their negligence claim by a preponderance of the evidence.  Before a trial on damages commenced, the parties agreed to settle.  In a judgment entry dated June 6, 2013, the trial court approved and confirmed the settlement agreements and dismissed the negligence claim with prejudice.

{¶ 6}  Plaintiffs now appeal from the June 6, 2013 final order, and they assign the following error:

> THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS DISMISSING COUNT II OF PLAINTIFFS' COMPLAINT FOR INDEMNITY.

{¶ 7}  Civ.R. 12(C) permits a party to move for judgment on the pleadings. Determination of a motion for judgment on the pleadings "is restricted solely to the

allegations in the pleadings." *Peterson v. Teodosio*, 34 Ohio St.2d 161, 166 (1973). A trial court will grant judgment on the pleadings when, after construing the material allegations in the complaint in favor of the nonmoving party, the court "finds beyond doubt [ ] that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief." *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570 (1996). Appellate courts review the decision to grant or deny judgment on the pleadings under the de novo standard. *Freedom Banc Mtge. Servs., Inc. v. Cincinnati Ins. Co.*, 10th Dist. No. 13AP-400, 2014-Ohio-226, ¶ 9; *Triplett v. Warren Corr. Inst.*, 10th Dist. No. 12AP-728, 2013-Ohio-2743, ¶ 8.

{¶ 8} Here, both plaintiffs and ODOT premise the majority of their arguments on facts that do not appear in the complaint or amended answer. As our consideration is limited to the allegations in the pleadings, we disregard those facts. Our analysis, therefore, will not incorporate the factual findings the trial court made after the liability trial on the negligence claim or the terms of Goscenski's settlement agreement.

{¶ 9} Plaintiffs argue that they have an implied right to indemnity from ODOT for any amounts they paid to Miller. Plaintiffs claim this right based on their contention that, in causing harm to Miller, Goscenski was only passively negligent, while ODOT was actively negligent. In response, ODOT maintains that it and Goscenski were concurrent tortfeasors, and thus, no implied right to indemnity exists.

{¶ 10} Indemnity arises from contract, either express or implied, and "is the right of a person, who has been compelled to pay what another should have paid, to require complete reimbursement." *Travelers Indemn. Co. v. Trowbridge*, 41 Ohio St.2d 11 (1975), paragraph two of the syllabus, *overruled on other grounds*, *Motorists Mut. Ins. Co. v. Huron Rd. Hosp.*, 73 Ohio St.3d 391 (1995). In other words, " 'where a person is chargeable with another's wrongful act and pays damages to the injured party as a result thereof, he has a right of indemnity from the person committing the wrongful act, the party paying the damages being only secondarily liable; whereas, the person committing the wrongful act is primarily liable.' " *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, ¶ 24, quoting *Trowbridge* at 11. A claim for indemnity is the mechanism whereby the secondarily liable party may seek full reimbursement from the primarily liable party for the money the secondarily liable party paid to discharge the liability owed as a result of

the wrongful acts of the primarily liable party. *Krasny-Kaplan Corp. v. Flo-Tork, Inc.*, 66 Ohio St.3d 75, 78 (1993).

{¶ 11} In the indemnity context, primary liability rests on the party who actually commits the wrong, while secondary liability rests on the party who, solely by reason of his relationship to the wrongdoer, is likewise answerable at law. *Wery v. Seff*, 136 Ohio St. 307, 311 (1940); *Losito v. Kruse*, 136 Ohio St. 183, 187 (1940). The employer/employee relationship provides an example of circumstances wherein primary and secondary liability arises. There, the employee who negligently causes injury to another in the course of his employment is primarily liable. The employer is also liable, under the doctrine of respondeat superior, but only secondarily so. The law imposes indemnity in such a situation because, due to the parties' relationship, the innocent party—the employer—is legally liable for wrongs committed solely by another—the employee. *Reynolds v. Physicians Ins. Co.*, 68 Ohio St.3d 14, 16 (1993).

{¶ 12} Generally, joint or concurrent tortfeasors may not recover from each other through indemnity.[1] *Maryland Cas. Co. v. Gough*, 146 Ohio St. 305 (1946), paragraph one of the syllabus; *Albers v. Great Cent. Transp. Corp.*, 145 Ohio St. 129, 135 (1945). This makes sense: joint or concurrent tortfeasors are both at fault, so neither is primarily or secondarily liable. *Gough* at 314. However, the Supreme Court of Ohio carved out an exception to the no-indemnity rule to allow a passively negligent tortfeasor to obtain indemnity from an actively negligent tortfeasor. The Supreme Court first applied this exception in *Morris v. Woodburn*, 57 Ohio St. 330 (1897). There, the owner of a lot abutting a street constructed a coal vault under the sidewalk. The property owner failed to properly cover the vault, and the plaintiff, while walking on the sidewalk, fell into it. The Supreme Court held that the city's and the property owner's concurrent negligence combined to produce the plaintiff's injuries. *Id.* at 335. The city, however, was only passively negligent, as it failed to discharge its duty to keep the sidewalk in repair. The

---

[1] In the negligence context, a joint tortfeasor is one who actively participates, cooperates in, requests, aids, encourages, ratifies, or adopts a wrongdoer's actions in pursuance of a common plan or design to commit a negligent act. *Yank v. Howard Hanna Real Estate Servs.*, 7th Dist. No. 02 CA 117, 2003-Ohio-3471, ¶ 28; *accord Maryland Cas. Co. v. Frederick Co.*, 142 Ohio St. 605, 612 (1944) ("[T]here must have been a concert of action between the tort-feasors before there could be joint liability."). A concurrent tortfeasor is one whose negligence concurs, not necessarily in point of time, but in point of consequence, with another's negligence to produce a single indivisible injury. *Motorists Mut. Ins. Co.*, 73 Ohio St.3d at 394.

property owner, in constructing and not properly safeguarding the vault, was actively negligent. The court concluded that in such a situation, "the ultimate liability * * * is upon him who actively creates the nuisance; so that, if a recovery were had against the city, it might, in turn, recover from the perpetrator of the wrong [, i.e., the property owner]." *Id.*

{¶ 13} The case of *Bello v. Cleveland*, 106 Ohio St. 94 (1922), involved facts similar to those in *Morris*. When the plaintiff stepped off of a sidewalk, the ground gave way due to the property owner's excavations. As it did previously in *Morris*, the Supreme Court of Ohio categorized the city and property owner as concurrent tortfeasors. *Bello* at 106. The city was passively negligent, as its negligence stemmed from its failure to perform its duty to keep the streets open, in repair, and free from nuisance. The property owner, who caused the dangerous condition, was the real wrongdoer and actively negligent. The court held that, given the city's passive negligence and the property owner's active negligence, if the plaintiff recovered against the city, the city would have a right to proceed against the property owner for indemnity. *Id.*

{¶ 14} In *Royal Indemnity Co. v. Becker*, 122 Ohio St. 582 (1930), the Supreme Court of Ohio expressly articulated that situations like those in *Morris* and *Bello* fell within the exception to the general rule that concurrent tortfeasors may not recover from each other through indemnity. The exception applied where " 'the wrongful act of one held finally liable created the unsafe or dangerous condition from which the injury resulted.' " *Becker* at 586, quoting *Union Stock Yards Co. v. Chicago, Burlington, & Quincy R.R. Co.*, 196 U.S. 217, 228 (1905). In such cases, " '[t]he principal and moving cause, resulting in the injury sustained, was the act of the first [actively negligent] wrongdoer, and the other [passively negligent wrongdoer] has been held liable to third persons for failing to discover or correct the defect caused by the positive act of the other.' " *Id.*

{¶ 15} While the foregoing precedent dates to the first half of the twentieth century and earlier, it remains valid law. In *Reynolds*, 68 Ohio St.3d at 16, the Supreme Court recognized a right to indemnity arising from the "abutting property owner/municipality" relationship. Thus, implicitly, the Supreme Court continues to acknowledge that, in a situation involving concurrent tortfeasors, the passive tortfeasor may obtain indemnity from the active tortfeasor.

{¶ 16} The Supreme Court last explicitly addressed the active/passive negligence theory in *Motorists Mut. Ins. Co. v. Huron Rd. Hosp.*, decided in 1995. There, the party seeking indemnity admitted that it was actively negligent. The court thus concluded that the party had no right to indemnity, holding, " '[i]ndemnification is not allowed when the two parties are joint or concurrent tortfeasors and are both chargeable with actual negligence.' " *Id.* at 394, quoting *Reynolds* at 16.

{¶ 17} Despite its history, the active/passive negligence theory does not dovetail with the general law of implied indemnity. Ordinarily, implied indemnity permits a secondarily liable party to recover complete compensation for damages arising from "the wrongs committed *solely* by the [primarily liable party]." (Emphasis added.) *Id.*; *Losito*, 136 Ohio St. at 185. Thus, for example, in a situation involving vicarious liability, a principal may recover from its agent when held liable for the wrongs that the agent, alone, committed. In the situation involving active and passive negligence, however, the wrongs are *not* committed solely by the primarily liable, actively negligent party. Rather, the actively and passively negligent parties are concurrently negligent—they both individually engaged in negligent behavior that joined to cause the plaintiff's injury.

{¶ 18} Not only is the active/passive negligence theory inconsistent with the general law of implied indemnity, it also results in an injustice. Implied indemnity based on the active/passive negligence theory shifts the entire loss of the passively negligent party to the actively negligent party. Thus, it allows the passively negligent party to completely escape paying for its wrong, despite its culpability.

{¶ 19} Moreover, although the Supreme Court continues to apply it, the active/passive negligence theory is not consonant with the modern world of comparative negligence. *Miller v. Am. President Lines, Ltd.*, 989 F.2d 1450, 1459 (6th Cir.1993); *Allison v. Shell Oil Co.*, 133 Ill.2d 26, 31 (1986); *Vertecs Corp. v. Reichhold Chems., Inc.*, 661 P.2d 619, 624-25 (Alaska 1983). Originally, courts developed the theory to alleviate the harsh common-law ban on contribution among joint or concurrent tortfeasors.[2] *Loose v. Offshore Navigation, Inc.*, 670 F.2d 493, 501 (5th Cir.1982); *Hansen v. Anderson, Wilmarth, & Van Der Maaten*, 630 N.W.2d 818, 826 (Iowa 2001); *Kennedy v.*

---

[2] Contribution "is the right of a person who has been compelled to pay what another should have paid in part to require partial (usually proportionate) reimbursement." *Trowbridge*, 41 Ohio St.2d at paragraph two of the syllabus.

*Sawyer*, 228 Kan. 439, 455 (1980). Because of the prohibition against contribution, joint or concurrent tortfeasors could not seek apportionment of damages based on comparative fault. In that legal environment, implying indemnity based on active and passive negligence permitted courts to perform a limited amount of equity. Courts could ensure that the loss fell on the most culpable tortfeasor, i.e., the tortfeasor that actively created the condition that resulted in the loss. *Vertecs Corp.* at 621 (using the active/passive negligence theory, "courts allowed total loss-shifting because they felt that justice and fairness so required"); Restatement of the Law 3d, Torts, Indemnity, Section 22, Reporters' Note on Comment e (2000) (the active/passive negligence theory "avoided the harsh effect of pro rata contribution when one of the tortfeasors was substantially more culpable than the other. [It is] inconsistent with the goals of comparative responsibility.").

{¶ 20} Today, Ohio has a statute, R.C. 2307.25, which grants joint or concurrent tortfeasors the right to contribution. R.C. 2307.25 provides the means for joint or concurrent tortfeasors to apportion damages among themselves in accordance with their relative degrees of legal responsibility. Therefore, there no longer exists a need for implied indemnification based on the active/passive negligence theory. *See Gomez v. Am. Elec. Power Serv. Corp.*, 726 F.2d 649, 652 (10th Cir.1984) ("A review of the decisions from comparative negligence jurisdictions reveals that a clear majority have held that the statutory adoption of a comparative negligence scheme effectively abrogates the theory of indemnity based on the active/passive negligence dichotomy."); *Owens v. Truckstops of Am.*, 915 S.W.2d 420, 434 (Tenn.1996) ("[T]here can be no claim for indemnification based on active-passive negligence because that distinction is subsumed into the doctrine of comparative fault."); *Kennedy* at 456 ("A large and well-reasoned body of law in comparative negligence jurisdictions has determined that the concept of active/passive negligence has been extinguished by the introduction of comparative negligence.").

{¶ 21} We, however, are bound to follow the law as set forth by the Supreme Court. As the Supreme Court has not abrogated the active/passive negligence theory, we must determine whether it applies to this case.

{¶ 22} To have a right to indemnity under the active/passive negligence theory, a party must be passively negligent. *Lingo v. Ohio Cent. R.R., Inc.*, 10th Dist. No. 05AP-206, 2006-Ohio-2268, ¶ 37; *Whitney v. Horrigan*, 112 Ohio App.3d 511, 515 (10th

Dist.1996); *Mahathiraj v. Columbia Gas of Ohio, Inc.*, 84 Ohio App.3d 554, 564 (10th Dist.1992). Where joint or concurrent tortfeasors both actively participate in the commission of a tort, no right of indemnification exists between the two. *Lingo* at ¶ 37; *Whitney* at 515; *Mahathiraj* at 564; *Lattea v. Akron*, 9 Ohio App.3d 118, 122 (10th Dist.1982). Active negligence is negligence committed through the tortfeasor's actual participation in the tort or his knowing acquiescence in the continuation of a dangerous situation that gives rise to the injury. *Nevins v. Ohio Dept. of Transp.*, 132 Ohio App.3d 6, 26 (10th Dist.1998); *accord Black's Law Dictionary* (9th Ed.2009) (defining "active negligence" as "[n]egligence resulting from an affirmative or positive act, such as driving through a barrier"). Passive negligence is negligence resulting from a person's failure to act where a duty to act exists. *Malagon v. McLaughlin*, 3d Dist. No. 13-89-8 (Dec. 13, 1990); *Black's Law Dictionary* (9th Ed.2000).[3]

{¶ 23} Here, as alleged in the complaint, Goscenski's negligence constituted driving over the centerline. This was an affirmative act, not a failure to act where a duty to act existed. Goscenski, therefore, was actively negligent. Consequently, plaintiffs are not entitled to indemnification under the active/passive negligence theory.

---

[3] These definitions are far from perfect. A failure to act, despite a duty to do so, does not always constitute passive negligence. A failure to act will become active negligence if a tortfeasor actually knows of a dangerous condition that it has a duty to correct, but does nothing to correct it. *See, e.g., Globe Indemn. Co. v. Schmitt*, 142 Ohio St. 595, 599-600 (1944) (active negligence occurred where a concurrent tortfeasor knew of the danger presented by its use of a ladder on a smooth floor, but did nothing to ameliorate the danger to persons standing below the ladder).

Tangentially, the "burdensome, inconsistent and often criticized nomenclature of 'active' or 'passive' negligence' " is another reason the active/passive negligence theory has fallen out of favor. *Schneider Natl., Inc. v. Holland Hitch Co.*, 843 P.2d 561, 574 (Wyo.1992); *accord Vertecs Corp.*, 661 P.2d at 624. As the Wyoming and Missouri Supreme Courts have recognized:

> With a little ingenuity in phrasing, negligence can be made to be either "active" or "passive" as suits the writer. For example, "driving an automobile with bad brakes" or "running through the stop sign" or "using a defective crane" might be said to be "active" negligence, while "omitting maintenance of brake fluid level" or "neglecting to apply the brakes" or "failing to inspect the crane in order to discover its defectiveness" might be "passive" negligence—these are the same acts or omissions, but the outcome depends not upon the facts, but upon how someone chooses to characterize them.

*Schneider Natl., Inc.* at 574, quoting *Missouri Pacific R.R. Co. v. Whitehead & Kales Co.*, 566 S.W.2d 466, 471 (Mo.1978).

{¶ 24} We note that plaintiffs averred in their complaint that Goscenski's negligence was passive as compared to ODOT's active negligence. Whether a party has a right to indemnity is a question of law. *Blair v. Mann*, 4th Dist. No. 98CA35 (Apr. 8, 1999). Thus, the averment at issue, which, if true, would entitle plaintiffs to indemnity from ODOT, is a conclusion of law. Although a court must presume all factual allegations in a complaint are true, the same does not apply to conclusions of law. *Thomas v. Progressive Cas. Ins. Co., Inc.*, 2d Dist. No. 24519, 2011-Ohio-6712, ¶ 18; *Morrow v. Reminger & Reminger Co. L.P.A.*, 183 Ohio App.3d 40, 2009-Ohio-2665, ¶ 7 (10th Dist.). Because the facts alleged in the complaint do not support plaintiffs' legal conclusion, we disregard it.

{¶ 25} In sum, we conclude that plaintiffs can prove no set of facts that would support a claim for indemnification. We thus find that the trial court did not err in granting ODOT's motion for judgment on the pleadings.

{¶ 26} For the foregoing reasons, we overrule plaintiffs' sole assignment of error, and we affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

TYACK and BROWN, JJ., concur.

———————————